AHDOOT & WOLFSON, PC
Tina Wolfson (admitted *pro hac vice*)
1016 Palm Avenue
West Hollywood, California 90069
Telephone: (310) 474-9111;
Facsimile: (310) 474-8585

MIRABELLA LAW
Erica Mirabella (BBO# 676750)
132 Boylston Street, 5th Floor
Boston, MA 02116
Telephone: 617-580-8270
Facsimile: 617-583-1905

[ADDITIONAL COUNSEL ON SIGNATURE PAGE]

*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| MATT DIFRANCESCO, ANGELA MIZZONI, and LYNN MARRAPODI, individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> UTZ QUALITY FOODS, INC., a Pennsylvania corporation, <br><br> Defendant. | Case No. 1:14-cv-14744-DPW <br><br> **FIRST AMENDED CLASS ACTION COMPLAINT** <br><br> Demand for Jury Trial |

**CLASS ACTION COMPLAINT**

Plaintiffs Matt DiFrancesco, Angela Mizzoni, and Lynn Marrapodi (collectively,

"Plaintiffs"), by and through their counsel, bring this Class Action Complaint against Defendant

Utz Quality Foods, Inc. ("Defendant"), on behalf of themselves and all others similarly situated,

and allege, upon personal knowledge as to their own actions, and upon their counsel's

investigations and upon information and belief as to all other matters, as follows:

## NATURE OF THE ACTION

1.     This is a consumer protection and false advertising class action.  Defendant

markets, advertises and distributes various snack foods, which it prominently advertises as "All

Natural."

2.     The products that Defendant advertises as "All Natural" include:[1]

- The following products, which this Complaint refers to, collectively, as the "Utz
  Snacks":

  - o  Utz Potato Chips Regular;
  - o  Utz Potato Chips Ripples;
  - o  Utz Potato Chips Wavy;
  - o  Utz Potato Chips BBQ;
  - o  Utz Potato Chips Honey BBQ;
  - o  Utz Potato Chips No Salt Added;
  - o  Utz Potato Chips Reduced Fat Regular;
  - o  Utz Potato Chips Reduced Fat Ripple Cut Regular;
  - o  Utz Potato Chips Tabasco;
  - o  Utz Potato Chips Wavy Pit BBQ;
  - o  Utz Potato Chips Baby Back Rib;
  - o  Utz Baked Potato Chips Original;
  - o  Utz Baked Potato Chips Tangy BBQ Flavored;
  - o  Utz Select Pretzels Honey Wheat Braided Sticks;
  - o  Utz Select Pretzels Pumpernickel Sticks;
  - o  Utz Select Pretzels Butter Sticks;
  - o  Utz Select Pretzels Everything;
  - o  Utz Select Pretzels Toasted Sesame Sticks;
  - o  Utz Popcorn Tabasco Flavored Butter;
  - o  Utz Tortillas White Round;
  - o  Utz Tortillas Yellow Round;
  - o  Utz Tortillas Restaurant Style;
  - o  Utz Tortillas Dipping;
  - o  Utz Tortillas Multigrain;
  - o  Utz Salsa Chunky Medium;
  - o  Utz Salsa Chunky Mild; and
  - o  Utz Salsa Sweet.

---

[1] Defendant may discontinue offering some products and regularly introduces new products that are also falsely and misleadingly labeled "All Natural."  Defendant may also market and sell additional substantially similar products of which Plaintiffs are unaware.  Plaintiffs will ascertain the identity of these additional products through discovery.

- The following products, which this Complaint refers to, collectively, as the "Bachman Snacks":

  o Bachman Pretzels Original Twist;
  o Bachman Pretzels Rolled Rods;
  o Bachman Pretzels Stix;
  o Bachman Pretzels Pita Squares;
  o Bachman Pretzels The Puzzle;
  o Bachman Pretzels Kidzels;
  o Bachman Pretzels Nutzels;
  o Bachman Pretzels HoneyWheat Splits;
  o Bachman Pretzels Mini;
  o Bachman Pretzels Low Sodium Mini;
  o Bachman Tortilla Chips Restaurant Style;
  o Bachman Tortilla Chips Multigrain;
  o Bachman Tortilla Chips Black Bean;
  o Bachman Tortilla Chips Deli Rounds White Corn;
  o Bachman Tortilla Chips Traditional Deli Rounds; and
  o Bachman Salsa Mild & Medium Thick and Chunky.

This Complaint refers to the Utz Snacks and the Bachman Snacks collectively as "the Products".

3. The Products are not "all natural" for three independent reasons. First, the Products contain unnatural genetically-modified ingredients – including cottonseed oil, corn oil, yellow corn, white corn, vinegar, maltodextrin, modified food starch, modified corn starch, corn syrup, and soy lecithin, among others – that are derived from GM crops. A genetically modified ("GM") crop is a crop whose genetic material has been altered by humans using genetic engineering techniques.

4. The World Health Organization defines genetically modified organisms ("GMOs"), which include GM crops, as "organisms in which the genetic material (DNA) has been altered in a way that does not occur naturally. GM crops are not natural, but man-made. There are wide-ranging controversies related to GM crops, including health risks from ingesting GM foods and negative environmental effects associated with growing GM crops. The use and

labeling of GM foods is the subject of a variety of laws, regulations, and protocols worldwide.

5.     Second, Defendant's "All Natural" claims are also false because the GM cottonseed oil, corn oil, canola oil, soybean oil, and vinegar used as ingredients in the Products is so heavily processed that it bears no chemical resemblance to the GM crops from which they are derived.  Through heavy industrialized processing, the GM cottonseed oil, canola oil, corn oil, soybean oil, and vinegar have become man-made, rather than natural.

6.     Third, Defendant's "All Natural" claims are also false because certain Products contain maltodextrin, soy lecithin, modified food starch, dextrose, malic acid, potassium chloride, and/or citric acid, all of which are unnatural, synthetic, and/or artificial.  Upon information and belief, Defendant's maltodextrin, soy lecithin, modified food starch, and dextrose are also derived from GM crops.  The presence of these ingredients in the Products causes the Products to be not "All Natural."

7.     Although the Products are not "All Natural," Defendant prominently labels every package of the Products sold in Massachusetts and throughout the United States as "All Natural." Defendant does this because consumers perceive all natural foods as better, healthier, and more wholesome.  In fact, the market for all natural foods has grown rapidly in recent years, a trend that Defendant exploits through false advertising.

8.     Defendant is well aware that its "All Natural" claims appeal to consumers.  All of the Products are prominently labeled as being "All Natural."  The product pages of Defendant's website showcase the Products' "All Natural" labeling.[2]

9.     Defendant's "All Natural" representations are false and misleading because the

---

[2] *See, e.g.*, http://www.getutz.com/get-snacks/potato-chips/regular-chips.html (last visited Mar. 16, 2014).

Products contain ingredients derived from GM crops – including GM cottonseed, GM canola, GM corn, and GM soybeans – and other unnatural, synthetic, and/or artificial ingredients and are, thus, not "All Natural."

10.     Any consumer who purchased the Products – irrespective of their motivation for purchasing the Products – suffered harm in the form of a higher price that Defendant was able to command for the Products based on the false representations that they are "All Natural."

11.     Plaintiffs bring claims against Defendant individually and on behalf of Classes (as defined herein) of all other similarly situated purchasers of the Products for: (1) breach of express warranty under Massachusetts law; (2) breach of express warranty under New York law; (3) violation of Massachusetts General Law ch. 93A; (4) violation of Massachusetts General Law ch. 266, § 91; (5) violations of New York General Business Law § 349; (6) violations of New York General Business Law § 350; (7) unjust enrichment under Massachusetts law (pleaded in the alternative); and (8) unjust enrichment under New York law (pleaded in the alternative).

12.     Plaintiffs seek an order requiring Defendant to, among other things: (1) cease the unlawful marketing; (2) conduct a corrective advertising campaign; and (3) pay damages and restitution to Plaintiffs and Class members.

## **PARTIES**

13.     Plaintiff Matt DiFrancesco is a consumer residing in Boston, Massachusetts.

14.     Plaintiff Angela Mizzoni is a consumer residing in Medford, Massachusetts.

15.     Plaintiff Lynn Marrapodi is a consumer residing in New York, New York.

16.     Defendant Utz Quality Foods, Inc. is a Pennsylvania corporation with its principal place of business located in Hanover, Pennsylvania.  Defendant manufactures, markets, and distributes the Products to consumers in Massachusetts and throughout the United States.

## JURISDICTION AND VENUE

17.     This Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2). The aggregated claims of the individual class members exceed $5,000,000, exclusive of interest and costs, and this is a class action in which more than two-thirds of the proposed plaintiff class, on the one hand, and Defendant, on the other, are citizens of different states.

18.     This Court has personal jurisdiction over Defendant because it has sufficient minimum contacts in Massachusetts or otherwise intentionally avails itself of the markets in Massachusetts, through the promotion, sale, marketing, and distribution of the Products sold in Massachusetts, to render the exercise of jurisdiction by this Court proper and necessary.

19.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(a)(1) because Plaintiffs DiFrancesco and Mizzoni are residents of this District, Defendant regularly conducts business throughout this District, and a substantial part of the events and/or omissions giving rise to this action occurred in this District.

## FACTUAL ALLEGATIONS

**A.      Defendant Deceptively Labels The Products As "All Natural"**

20.     For the four years preceding the filing of this Complaint, Defendant has prominently and conspicuously labeled and advertised the Products as "All Natural."  The labeling and marketing on the Products communicates a straightforward, material message, which is that the "All Natural" Products are all natural.

21.     The core deceptive, false, and misleading representations that the Products are "All Natural" is conspicuously and prominently placed on the Products' packaging for every person to see as soon as they pick up the Products to read it.  By way of illustration, the "All Natural" representations appear on the Products' packaging like this:



22.     The online retailer Ebay currently advertises Utz Multigrain Tortilla Chips using the following image, which prominently displays the "All Natural" claim:[3]



23.     By conspicuously and prominently placing the "All Natural" representations on

---

[3] *See* http://www.ebay.com/itm/Utz-Multigrain-Tortilla-Chips-10-Oz-Bags-Pack-of-4-/191444343610?pt=LH_DefaultDomain_0&hash=item2c92f8db3a (last visited Mar. 16, 2015).

the Products' packaging, Defendant has ensured that all consumers purchasing the Products are exposed to its "All Natural" claims.

**B.      Food Derived From Genetically Modified Organisms Is Not All Natural**

24.      Genetically modified crops do not occur in nature, and as such are not "all natural." On the contrary, genetically modified crops are crops that are genetically manipulated from their natural state. For example, Monsanto, one of the largest producers of genetically modified crop seed, defines "Genetic modification (genetic engineering) – The technique of removing, modifying or adding genes to a living organism via genetic engineering or other more traditional methods. Also referred to as gene splicing, recombinant DNA (rDNA) technology or genetic engineering." Monsanto also defines Genetically Modified Organisms ("GMO"). GMO is "[p]lants or animals that have had their genetic makeup altered to exhibit traits that are not naturally theirs. In general, genes are taken (copied) from one organism that shows a desired trait and transferred into the genetic code of another organism."[4]

25.      The World Health Organization's ("WHO") definition of GMO is consistent with how Monsanto defines them: "Genetically modified (GM) foods are foods derived from organisms whose genetic material (DNA) has been modified in a way that does not occur naturally, e.g. through the introduction of a gene from a different organism."[5] WHO also cautions that "All GM foods should be assessed before being allowed on the market."[6]

26.      The United States Environmental Protection Agency ("EPA") for Prevention, Pesticides, And Toxic Substances, has distinguished between conventional breeding of plants

---

[4] *See* http://www.monsanto.com/newsviews/pages/glossary.aspx#g (last visited Mar. 16, 2015).

[5] *See* http://www.who.int/topics/food_genetically_modified/en/ (last visited Mar. 16, 2015).

[6] *Id.*

"through natural methods, such as cross-pollination" and genetic engineering.  "Conventional breeding is a method in which genes for pesticidal traits are introduced into a plant through natural methods, such as cross-pollination."  "Genetically engineered plant-incorporated protectants are created through a process that utilizes several different modern scientific techniques to introduce a specific pesticide-producing gene into a plant's DNA genetic material."[7]

27.     Romer Labs, a company that provides diagnostic services to the agricultural industry, including tests to detect and determine the existence of GM crops, defines GM crops as "[a]griculturally important plants [that] are often genetically modified by the insertion of DNA material from outside the organism into the plant's DNA sequence, allowing the plant to express novel traits that normally would not appear in nature, such as herbicide or insect resistance. Seed harvested from GMO plants will also contain these modifications."[8]

28.     As indicated by the various industry, government and health protection agency organizations cited above, GM crops and GMOs are not "all natural."  In addition, products made from GM crops and GMOs are not "all natural."

29.     The United States Department of Agriculture ("U.S.D.A") estimates that, as of 2014, approximately 91% of cotton, 89% of corn, 90% of rapeseed and 94% of soybeans grown in the United States is genetically modified.   Canola oil is made from rapeseed.  Upon information and belief, the small percentage of these crops that are not genetically modified are grown using organic agricultural processes and are used exclusively in USDA Organic-certified

---

[7] *See* EPA Questions & Answers, Biotechnology: Final Plant-Pesticide/Plant Incorporated Protectants (PIPs) Rules, dated July 19, 2001 at http://www.epa.gov/scipoly/ biotech/pubs/qanda.pdf (last visited Mar. 16, 2015).

[8] *See* http://www.romerlabs.com/en/knowledge/gmo/ (last visited Mar. 16, 2015).

and/or Non-GMO Project certified products.  Upon information and belief, given the high degree of commingling of agricultural products in grain silos, and because Defendant's Products are neither USDA Organic-certified or Non-GMO Project certified, the soybeans, cotton, corn, and rapeseed from which Defendant's ingredients are derived are genetically modified.

30.     The market for natural products is large and ever growing and consumers are willing to pay a premium for products they believe to be natural, healthy and/or organic.  Natural Foods Merchandiser magazine's 2013 Market Overview reported significant growth for the natural and organic products industry.  Gleaning more than $89.4 billion dollars in revenue in 2013 alone, the industry grew ten-and-a-half percent (10.5%) from 2012, revealing that consumers' desire for natural products is huge and continues to grow.

31.     Defendant's "All Natural" representations are deceptive, false, misleading, and unfair to consumers who are injured in fact by purchasing Products that Defendant claims are "All Natural" when the Products actually contain ingredients made from GM cottonseed, corn, rapeseed, and soybeans and, thus, are not all natural.

**C.     The Products Are Not Natural Because They Contain GMOs And Ingredients Sourced From GM Crops**

32.     The Products contain GMOs, ingredients derived from GM crops, highly-processed ingredients and/or artificial, synthetic ingredients, and are, thus, not "all natural."

33.     Specifically, although labeled "All Natural," each of the Utz Snacks contain the following unnatural ingredients:

      a.     Utz Potato Chips Regular: Contains cottonseed oil.

      b.     Utz Potato Chips Ripples: Contains cottonseed oil.

      c.     Utz Potato Chips Wavy: Contains cottonseed oil.

d.      <u>Utz Potato Chips BBQ</u>: Contains cottonseed oil, dextrose, maltodextrin, and citric acid.

e.      <u>Utz Potato Chips Honey BBQ</u>: Contains cottonseed oil, dextrose, maltodextrin, and citric acid.

f.      <u>Utz Potato Chips No Salt Added:</u> Contains cottonseed oil.

g.      <u>Utz Potato Chips Reduced Fat Regular:</u> Contains cottonseed oil.

h.      <u>Utz Potato Chips Reduced Fat Ripple Cut Regular:</u> Contains cottonseed oil.

i.      <u>Utz Potato Chips Tabasco</u>: Contains cottonseed oil, maltodextrin, distilled vinegar, dextrose, and citric acid.  In addition, this Product contains paprika extract for color.

j.      <u>Utz Potato Chips Wavy Pit BBQ</u>: Contains cottonseed oil, maltodextrin [derived from corn], distilled vinegar, dextrose, and citric acid.  In addition, this Product contains paprika extract for color.

k.      <u>Utz Potato Chips Baby Back Rib</u>: Contains cottonseed oil, dextrose, maltodextrin [derived from corn], vinegar, modified food starch [derived from corn], citric acid, and malic acid. In addition, this Product contains oleoresin paprika extract for color.

l.      <u>Utz Baked Potato Chips Original</u>: Contains modified food starch, corn oil, maltodextrin, and soy lecithin

m.      <u>Utz Baked Potato Chips Tangy BBQ Flavored</u>: Contains modified food starch, corn oil, maltodextrin, citric acid, soy lecithin, and malic acid.  In addition, this Product contains oleoresin paprika extract for color.

n.  Utz Select Pretzels Honey Wheat Braided Sticks: Contains one or more of the following: corn, canola, cottonseed, or soybean oil.

o.  Utz Select Pretzels Pumpernickel Sticks: Contains maltodextrin, dextrose, citric acid, and vinegar.  In addition, this Product contains added carmel color.

p.  Utz Select Pretzels Butter Sticks: Contains corn oil.

q.  Utz Select Pretzels Everything: Contains corn oil.

r.  Utz Select Pretzels Toasted Sesame Sticks: Contains potassium chloride.

s.  Utz Popcorn Tabasco Flavored Butter: Contains dextrose, vinegar, citric acid and one or more of the following oils: cottonseed, corn, canola, sunflower, or safflower.  In addition, this Product contains added beta carotene for color.

t.  Utz Tortillas White Round: Contains white corn and one or more of the following oils: cottonseed, corn, or sunflower.

u.  Utz Tortillas Yellow Round: Contains yellow corn and one or more of the following oils: cottonseed, corn, or sunflower.

v.  Utz Tortillas Restaurant Style:  Contains white corn, toasted corn germ and one or more of the following oils: cottonseed, corn, or sunflower.

w.  Utz Tortillas Dipping: Contains white corn, toasted corn germ and one or more of the following oils: cottonseed, corn, or sunflower.

x.  Utz Tortillas Multigrain: Contains whole grain corn flour and corn oil.

y.  Utz Salsa Chunky Medium:  Contains citric acid and vinegar.

z.  Utz Salsa Chunky Mild:  Contains citric acid and vinegar.

aa.    <u>Utz Salsa Sweet</u>. Contains corn, distilled vinegar, and citric acid.

34.    Likewise, although labeled "All Natural," each of the Bachman Snacks contain the following unnatural ingredients:

a.    <u>Bachman Pretzels Rolled Rods</u>: Contains corn syrup.

b.    <u>Bachman Pretzels Stix</u>: Contains corn syrup.

c.    <u>Bachman Pretzels Pita Squares</u>: Contains corn syrup.  It also may contain canola oil.

d.    <u>Bachman Pretzels The Puzzle</u>: Contains corn syrup.

e.    <u>Bachman Pretzels Kidzels</u>: Contains canola oil and corn syrup.

f.    <u>Bachman Pretzels Nutzels</u>: Contains corn syrup.

g.    <u>Bachman Pretzels Honey Wheat Splits</u>: Contains corn syrup.

h.    <u>Bachman Pretzels Mini</u>: Contains corn syrup.

i.    <u>Bachman Pretzels Low Sodium Mini</u>: Contains corn syrup.

j.    <u>Bachman Tortilla Chips Restaurant Style</u>: Contains whole grain corn, corn, and/or soybean oil.

k.    <u>Bachman Tortilla Chips Multigrain</u>: Contains whole grain white corn, corn or sunflower or soybean oil, and corn germ.

l.    <u>Bachman Tortilla Chips Black Bean</u>: Contains whole grain corn, and corn or sunflower or soybean oil.

m.    <u>Bachman Tortilla Chips Deli Rounds White Corn</u>: Contains whole grain corn, and corn or sunflower or soybean oil.

n.    <u>Bachman Tortilla Chips Traditional Deli Rounds</u>: Contains whole grain corn, and corn or sunflower or soybean oil.

o.      <u>Bachman Salsa Mild & Medium Thick and Chunky</u>: Contains citric acid and vinegar.

35.     The cottonseed oil used in the Products is produced from GM cotton.

36.     The white corn, yellow corn, toasted corn germ, corn oil, corn syrup, modified food starch, corn flour, modified corn starch, maltodextrin, dextrose, and vinegar used in the Products are produced using GM corn.

37.     The soybean oil and soy lecithin used in the Products is produced from GM soybeans.

38.     The canola oil used in the Products is produced from GM rapeseed.

**D.      The Products Are Not Natural Because They Contain Ingredients That Are Chemically-Derived, Heavily Processed, And/Or Are Synthetically Manufactured**

39.     Independent of the use of GM crops in the Products, Defendant's "All Natural" claims are false because the Products contain ingredients that are synthetic and so heavily processed that they no longer are chemically the same as the raw ingredients. The various processes by which the ingredients are synthesized render the final Products chemically derived and unnatural. While they retain the non-natural genetic attributes of the GM crops from which they are sourced, many of the Products' ingredients no longer bear any natural chemical resemblance to their source crops as a result of the extensive process by which they are refined.

40.     ***Cottonseed Oil, Corn Oil, Soybean Oil, and Canola Oil*** are heavily-processed cooking oils and are not natural.

41.     Many types of oil are extracted through processes that allow the oils to retain the chemical composition occurring in nature. Cold pressed olive oil, for example, is produced through a mechanical process of compressing the oil from olives. Chemicals may also be used in

the extraction process to obtain a higher yield of oil.  However, chemically, the oil at the end of the process is the same as it was at the beginning of the process.

42.     In contrast, the processes used to create the cottonseed, corn, soybean, and canola oil used in the Products go well beyond mere extraction techniques, resulting in chemically altered goods.  Cottonseed, corn, soybean, and canola oil typically undergo several distinct chemical processes: (1) hexane extraction; (2) chemical refining; (3) bleaching; (4) deodorizing; and (5) conditioning:

a.     The manufacturer first physically presses the cottonseed, rapeseed, corn, or soybeans, which typically extracts a small portion of the extractable oil.  Next, the vegetables are treated with hexane, a carcinogenic chemical linked to cancer and other major health problems in studies conducted on animals, to extract the remaining crude oil.  Residual hexane may be present in the final product.

b.     After the crude oil has been extracted, the crude oil is treated with sodium hydroxide and/or phosphoric acid to separate and remove free fatty acids ("FFAs").  The oil is separated from byproducts using centrifugal separation.  Oftentimes potassium hydroxide, a corrosive acid, also is used in the process.

c.     After neutralization, the cottonseed, corn, soybean, or canola oil is bleached and deodorized with additional cleaning solutions and processes to lighten the oil's color and minimize its odor.

d.     After being bleached and deodorized, the cottonseed, corn, soybean, or canola oil typically is conditioned using phosphoric acid, consumption of which has been linked to lower bone density as well as chronic kidney disease.

43.     ***Vinegar*** is a highly processed ingredient.  Independent of the use of GM corn to

manufacture vinegar, Defendant's "All Natural" claims are also false because the vinegar used as an ingredient is so heavily processed that it no longer is chemically the same as the GM corn from which it is sourced. The various processes by which the GM corn is converted to vinegar render the vinegar chemically-derived and not natural. The vinegar no longer bears any natural chemical resemblance to its source GM corn as a result of the extensive process by which it is refined.

44.    Upon information and belief, Defendant sources its vinegar from a manufacturer who uses GM corn to manufacture the vinegar.

a.    The first step in the process of manufacturing vinegar involves steeping the corn in a mild acidic water solution. This helps to prepare the corn for separation into its component parts: corn oil, corn fiber, corn gluten, and corn starch.

b.    Then the corn is wet milled, where it is soaked or "steeped" in water and dilute sulfurous acid for 24 to 48 hours. This steeping facilitates the separation of the grain into its many component parts. After steeping, the corn slurry is processed through a series of grinders to separate the corn germ.

c.    The unmodified starch and any remaining water from the mash can then be fermented into ethanol. In this step, enzymes are added to the mash to convert the starch to dextrose, a simple sugar.

d.    On information and belief, ammonia is added to the mash for pH control and as a nutrient to the yeast. The mash is processed in a high-temperature cooker to reduce bacteria levels ahead of fermentation. The mash is cooled and transferred to fermenters where yeast is added and the conversion of sugar to ethanol and carbon dioxide (CO2) begin.

e.    The conversion from carbohydrate to vinegar involves multi-step

processing utilizing chemicals, including ammonia, for pH control, enzymatic function, as well as heating, and use of specific strains of bacteria all under careful monitored settings.

f.      Further processing of vinegar, following substrate conversion to acetic acid may include filtration, clarification, distillation and pasteurization.

45.    ***Citric Acid*** is made synthetically by the fermentation of glucose.  The process of making citric acid utilizes GE sugar beets and GE corn.  Citric acid increases the acidity of a microbe's environment, which makes it harder for bacteria and mold to survive and reproduce. Citric acid functions as a preservative.

46.    ***Dextrose*** is a chemically derived sweetener and is a principal component of high fructose corn syrup.  It is produced through chemical degradation of corn starch by complete hydrolysis with certain acids or enzymes, followed by commercial refinement and crystallization of the resulting hydrolysate.  Dextrose is thus a synthetic substance.  On information and belief, GM corn is used as the source of the dextrose.

47.    ***Malic acid*** is a synthetic compound.  Malic acid is synthetically produced by the hydration of fumaric acid or maleic acid.  Both fumaric acid and maleic acid are hazardous substances.  40 C.F.R. § 116.4.  Malic acid is not permitted in baby foods.  21 C.F.R. § 184.1069(d).

48.    ***Maltodextrin*** is a saccharide polymer that is produced through partial acid and enzymatic hydrolysis of corn starch.  On information and belief, GM corn is used as the source of the maltodextrin.  Aside from the fact that maltodextrin is derived from GM corn, maltodextrin is also so highly processed that it is no longer chemically the same as GM corn from which it is derived.

49.    ***Modified Food Starch and Modified Corn Starch***: Modified food or corn starch

is a derivative of starch that is chemically treated (often with hydrochloric acid) to change its properties for use as a thickening agent, stabilizer, or emulsifier.  Modified food starch is derived from GM corn.[9]

50.     ***Potassium chloride*** is a synthetic substance.  It is produced through fractional crystallization or flotation (dissolved air flotation, induced gas flotation, or froth flotation), excessive processing methods that are beyond family kitchen chemistry.  21 C.F.R. § 184.1622. Food-grade potassium chloride often contains additional synthetic substances as anti-caking agents, such as tricalcium phosphate, silicon dioxide, or magnesium hydroxide carbonates.

51.     ***Soy Lecithin***: Soy lecithin is used in food as an emulsifier, lubricant, and preservative.  Soy Lecithin is extracted from soybeans by immersing them in hexane before further processing.  On information and belief, Defendant's soy lecithin is derived from GM soybeans.

52.     ***Paprika Extract, Caramel Color,*** and ***Beta Carotene*** are added colors.  Stating its policy, the United States Food and Drug Administration explains, "[s]ince all added colors result in an artificially colored food, we would object to the declaration of any added color as 'food' or 'natural.'"[10]

---

[9] *See* Food and Drug Administration Compliance Policy Guideline Manual Sec. 578.100 Starches - Common or Usual Names, available at http://www.fda.gov/ICECI/ComplianceManuals/CompliancePolicyGuidanceManual/ucm074605 .htm (last visited Mar. 16, 2015).

[10] *See* Food and Drug Administration Compliance Policy Guideline Manual 578.100 Label Declaration of Certification-Exempt Color Additives, available at http://www.fda.gov/ICECI/ComplianceManuals/CompliancePolicyGuidanceManual/ucm074644 .htm (last visited Mar. 16, 2015).

**E.      Defendant's False and Misleading Advertising is Likely to Deceive Reasonable Consumers**

53.      Defendant's false and misleading representations and omissions are likely to deceive Plaintiffs and other reasonable consumers.

54.      Reasonable consumers must and do rely on food label representations and information in making purchase decisions.

55.      Defendant's statement that the Products are "All Natural" is material to a reasonable consumer's purchase decision because reasonable consumers, such as Plaintiffs, care whether food products contain unnatural, synthetic, artificial, and/or GM ingredients, especially when a product claims to be "All Natural."

56.      Reasonable consumers attach importance to an "All Natural" claim when making a purchasing decision.

57.      According to a June 2014 consumer survey conducted by Consumer Reports, more than 8 out of 10 consumers believe that packaged foods carrying the "natural" label should come from food that contains ingredients grown without pesticides (86%), do not include artificial ingredients (87%), and do not contain GM organisms (GMOs) (85%).[11]

58.      Defendant markets and advertises the Products as "All Natural" to increase sales derived from the Products.  Defendant is well aware that claims of food being "All Natural" are material to reasonable consumers.

59.      Upon information and belief, in making the false, misleading, and deceptive representations and omissions, Defendant knew and intended that consumers would pay a price

---

[11] *See* http://finance.yahoo.com/news/consumer-reports-survey-majority-americans-100000330.html (last visited Mar. 16, 2015).

premium for the Products if it were labeled "All Natural."

**F.     Plaintiffs' Reliance and Damages**

60.     Plaintiff Matt DiFrancesco purchased several Products within the past four years in reliance on Defendant's representations that the Products were "All Natural," including Utz Potato Chips Regular, Utz Restaurant Style Tortillas Chips, and Bachman MultiGrain Tortilla Chips.  Plaintiff DiFrancesco purchased the Products at Shaw's Supermarket in Boston, Massachusetts.  Plaintiff DiFrancesco purchased the Bachman MultiGrain Tortilla Chips after August 2012.

61.     The packaging of the Products that Mr. DiFrancesco purchased contained the representations that the Products are "All Natural."  Mr. DiFrancesco believed Defendant's representation that the Products are "All Natural."  He relied on the "All Natural" representations in making his purchase decisions.

62.     Mr. DiFrancesco was willing to pay for the Products because of the representations that they were "All Natural" and would not have purchased the Products, would not have paid as much for the Products, or would have purchased alternative products in the absence of the representations, or with the knowledge that the Products contained genetically modified, heavily processed, synthetic, and/or artificial ingredients.

63.     Mr. DiFrancesco paid for "All Natural" products, but he received Products that were not "All Natural."  Specifically, he received Products made with cottonseed oil, white corn, toasted corn germ, whole grain white corn, and corn germ, that are derived, respectively, from GM cottonseed and GM corn, which were genetically manipulated in a laboratory to exhibit traits that cotton and corn do not possess in nature and are otherwise highly processed.

64.     The Products that Mr. DiFrancesco received were worth less than the products for

which he paid.  By purchasing Products in reliance on advertising that is false, Mr. DiFrancesco

has suffered injury in fact and lost money as a result of the unfair business practices alleged here.

65.     Plaintiff Angela Mizzoni purchased several Products within the past four years in

reliance on Defendant's representations that the Products were "All Natural," including Utz

Select Pretzels Honey Wheat Braided Sticks, Utz Salsa Chunky Medium, Utz Baked Potato

Chips Original, and Bachman Pretzels Rolled Rods.  Plaintiff Mizzoni purchased the Products at

the Market Basket in Reading, Massachusetts.  Plaintiff Mizzoni purchased the Bachman

Pretzels Rolled Rods after August 2012.

66.     The packaging of the Products that Ms. Mizzoni purchased contained the

representations that the Products are "All Natural."  Ms. Mizzoni believed Defendant's

representation that the Products are "All Natural."  She relied on the "All Natural"

representations in making her purchase decisions.

67.     Ms. Mizzoni was willing to pay for the Products because of the representations

that they were "All Natural" and would not have purchased the Products, would not have paid as

much for the Products, or would have purchased alternative products in the absence of the

representations, or with the knowledge that the Products contained genetically modified, heavily

processed, synthetic, and/or artificial ingredients.

68.     Ms. Mizzoni paid for "All Natural" products, but she received Products that were

not "All Natural."  Specifically, she received Products made with modified food starch, corn oil,

maltodextrin, corn syrup, vinegar, and soy lecithin, that are derived from GM corn and GM

soybeans, which were genetically manipulated in a laboratory to exhibit traits that corn and

soybeans do not possess in nature and are otherwise highly processed.  Ms. Mizzoni also

received Products that contained the unnatural, artificial, and/or synthetic ingredients

maltodextrin and citric acid.

69.     The Products that Ms. Mizzoni received were worth less than the products for which she paid.  By purchasing Products in reliance on advertising that is false, Ms. Mizzoni has suffered injury in fact and lost money as a result of the unfair business practices alleged here.

70.     Plaintiff Lynn Marrapodi purchased several Products within the past four years in reliance on Defendant's representations that the Products were "All Natural," including Utz Regular Potato Chips, Utz Multigrain Tortilla Chips, Bachman Pretzels Rolled Rods, and Bachman Pretzel Stix.  Plaintiff Marrapodi purchased the Products at the several retailers located in Manhattan including Kmart, Metropolitan Grocery, and A&P.  Plaintiff Marrapodi purchased the Bachman Pretzels Rolled Rods after August 2012.

71.     The packaging of the Products that Ms. Marrapodi purchased contained the representations that the Products are "All Natural."  Ms. Marrapodi believed Defendant's representation that the Products are "All Natural" and relied on the "All Natural" representations in making her purchase decisions.

72.     Ms. Marrapodi was willing to pay for the Products because of the representations that they were "All Natural" and would not have purchased the Products, would not have paid as much for the Products, or would have purchased alternative products in the absence of the representations, or with the knowledge that the Products contained genetically modified, heavily processed, synthetic, and/or artificial ingredients.

73.     Ms. Marrapodi paid for "All Natural" products, but she received Products that were not "All Natural."  Specifically, she received Products made with cottonseed oil, corn flour, corn oil, and corn syrup, that are derived from GM cotton and GM corn, which were genetically manipulated in a laboratory to exhibit traits that corn and soybeans do not possess in nature and

are otherwise highly processed.

74.     The Products that Ms. Marrapodi received were worth less than the products for

which she paid.  By purchasing Products in reliance on advertising that is false, Ms. Marrapodi

has suffered injury in fact and lost money as a result of the unfair business practices alleged here.

## CLASS ACTION ALLEGATIONS

75.     Plaintiffs seek relief in their individual capacities and as representatives of all

others who are similarly situated.  Pursuant to Fed. R. Civ. P. 23(a) and (b)(2) and/or (b)(3),

Plaintiffs seek certification of a Massachusetts Class, a New York Class, and a Nationwide

Class.

76.     The Massachusetts Class is initially defined as follows:

> All persons residing in Massachusetts who, from the date four
> years prior to the filing of this Complaint until the date notice is
> disseminated to the Class, purchased any of the Products (the
> "Massachusetts Class").

77.     The New York Class is initially defined as follows:

> All persons residing in New York who, from the date four years
> prior to the filing of this Complaint until the date notice is
> disseminated to the Class, purchased any of the Products (the
> "New York Class").

78.     The Nationwide Class is initially defined as follows:

> All persons residing in the United States who, from the date four
> years prior to the filing of this Complaint until the date notice is
> disseminated to the Class, purchased any of the Products (the
> "Nationwide Class").

79.     Excluded from each of the above Classes is Defendant, including any entity in

which Defendant has a controlling interest, is a parent or subsidiary, or which is controlled by

Defendant, as well as the officers, directors, affiliates, legal representatives, predecessors,

successors, and assigns of Defendant.  Also excluded are the judges and court personnel in this

case and any members of their immediate families, as well as any person who purchased the Products for the purpose of resale.

80.     Plaintiffs reserve the right to amend or modify these Class definitions with greater specificity or division into subclasses after having had an opportunity to conduct discovery.

81.     <u>Numerosity</u>.  Fed. R. Civ. P. 23(a)(1).  Each Class is so numerous that joinder of all members is unfeasible.  While the precise number of Class members has not been determined at this time, Plaintiffs are informed and believe that millions of consumers have purchased Products during the class period.

82.     <u>Commonality</u>.  Fed. R. Civ. P. 23(a)(2) and (b)(3).  There are questions of law and fact common to each Class, which predominate over any questions affecting only individual members of each respective Class.  These common questions of law and fact include, without limitation:

a.     Whether Defendant falsely and/or misleadingly misrepresented the Products as being "All Natural";

b.     Whether Defendant's misrepresentations are likely to deceive reasonable consumers;

c.     Whether Defendant breached express warranties;

d.     Whether Defendant was unjustly enriched;

e.     Whether Defendant violated Massachusetts General Law ch. 93A;

f.     Whether Defendant violated Massachusetts General Law ch. 266, §91;

g.     Whether Defendant violated New York General Business Law § 349;

h.     Whether Defendant violated New York General Business Law § 350; and

i.     The nature of the relief, including equitable relief, to which Plaintiffs and

the Class members are entitled.

83.     <u>Typicality</u>.  Fed. R. Civ. P. 23(a)(3).  Plaintiffs' claims are typical of the claims of the Class he or she seeks to represent.  Plaintiffs and all Class members were exposed to uniform practices and sustained injuries arising out of and caused by Defendant's unlawful conduct.

84.     <u>Adequacy of Representation</u>.  Fed. R. Civ. P. 23(a)(4).  Plaintiffs will fairly and adequately represent and protect the interests of the members of the Classes.  Further, Plaintiffs' counsel is competent and experienced in litigating class actions.

85.     <u>Superiority</u>.  Fed. R. Civ. P. 23(b)(3).  A class action is superior to other available methods for the fair and efficient adjudication of this action since joinder of all Class members is impracticable and will waste judicial resources.  Moreover, the adjudication of this controversy through a class action will avoid the possibility of inconsistent and potentially conflicting outcomes.  Finally, there will be no difficulty in managing this action as a class action.

86.     <u>Injunctive and Declaratory Relief</u>.  Fed. R. Civ. P. 23(b)(2).  Defendant's misrepresentations are uniform as to all members of each Class.  Defendant has acted or refused to act on grounds that apply generally to each Class, so that final injunctive relief or declaratory relief is appropriate with respect to each Class as a whole.

<b><u>FIRST CAUSE OF ACTION</u></b><br><b>Breach of Express Warranty</b><br><b>(By Plaintiffs DiFrancesco and Mizzoni and the Massachusetts Class)</b>

87.     Plaintiffs DiFrancesco and Mizzoni incorporate all preceding factual allegations as if fully set forth herein.

88.     Defendant warranted that the Products at issue in this action were "All Natural."

89.     Plaintiffs DiFrancesco and Mizzoni and members of the Massachusetts Class reasonably relied upon Defendant's "All Natural" representations by purchasing Defendant's

Products.

90.     Defendant's warranties became part of the basis of the bargain.

91.     Defendant breached its warranties by manufacturing, selling and/or distributing Products to consumers that are prominently labeled "All Natural" but that contain genetically modified, heavily processed, synthetic and/or artificial ingredients and are, thus, not all natural.

92.     All conditions precedent to seeking liability under this claim for breach of express warranty have been performed by Plaintiffs DiFrancesco and Mizzoni and Massachusetts Class members who paid for the Products at issue.

93.     On December 30, 2014, Plaintiffs DiFrancesco and Mizzoni provided notice to Defendant of its breaches of express warranty.  Further, Defendant previously knew or should have known of the falsity of its "All Natural" claim because the vast majority of cotton, corn, rapeseed and soybeans grown in the United States is genetically modified and Defendant did not use ingredients sourced from organic crops for the Products.  Thus, Defendant had actual and/or constructive notice that its "All Natural" claims were and are false and to date has taken no action to remedy its breaches of express warranty.

94.     Defendant's breaches of warranty have caused Plaintiffs DiFrancesco and Mizzoni and Massachusetts Class members to suffer injuries, paying for falsely labeled products, and entering into transactions they would not have entered into for the consideration that Plaintiffs DiFrancesco and Mizzoni and Massachusetts Class members paid.

95.     As a direct and proximate result of Defendant's breaches of warranty, Plaintiffs DiFrancesco and Mizzoni and Massachusetts Class members have suffered damages and continue to suffer damages, including economic damages in terms of the difference between the value of the Products as promised and the value of the Products as delivered.

96.     As a result of the breach of these warranties, Plaintiffs DiFrancesco and Mizzoni and Massachusetts Class members are entitled to legal and equitable relief including damages, costs, attorneys' fees, rescission, and/or other relief as deemed appropriate, for an amount to compensate them for not receiving the benefit of their bargain.

**SECOND CAUSE OF ACTION**
**Breach of Express Warranty**
**(By Plaintiff Marrapodi and the New York Class)**

97.     Plaintiff Marrapodi incorporates all preceding factual allegations as if fully set forth herein.

98.     Defendant warranted that the Products at issue in this action were "All Natural."

99.     Plaintiff Marrapodi and members of the New York Class reasonably relied upon Defendant's "All Natural" representations by purchasing Defendant's Products.

100.    Defendant's warranties became part of the basis of the bargain.

101.    Defendant breached its warranties by manufacturing, selling and/or distributing Products to consumers that are prominently labeled "All Natural" but that contain ingredients sourced from genetically modified crops, heavily processed, synthetic and/or artificial ingredients and are, thus, not all natural.

102.    All conditions precedent to seeking liability under this claim for breach of express warranty have been performed by Plaintiff Marrapodi and New York Class members who paid for the Products at issue.

103.    Defendant's breaches of warranty have caused Plaintiff Marrapodi and New York Class members to suffer injuries, paying for falsely labeled products, and entering into transactions they would not have entered into for the consideration that Plaintiff Marrapodi and New York Class members paid.

104.    As a direct and proximate result of Defendant's breaches of warranty, Plaintiff Marrapodi and New York Class members have suffered damages and continue to suffer damages, including economic damages in terms of the difference between the value of the Products as promised and the value of the Products as delivered.

105.    As a result of the breach of these warranties, Plaintiff Marrapodi and New York Class members are entitled to legal and equitable relief including damages, costs, attorneys' fees, rescission, and/or other relief as deemed appropriate, for an amount to compensate them for not receiving the benefit of their bargain.

### THIRD CAUSE OF ACTION
### Violation of Massachusetts General Law ch. 93A
### (By Plaintiffs DiFrancesco and Mizzoni and the Massachusetts Class)

106.    Plaintiffs DiFrancesco and Mizzoni incorporate all preceding factual allegations as if fully set forth herein.

107.    Plaintiffs DiFrancesco and Mizzoni bring this claim on behalf of themselves and all other Massachusetts Class members who purchased the Products, asserting claims pursuant to M.G.L. c. 93A.

108.    M.G.L. c. 93A, § 2 provides that "unfair methods of competition and unfair and deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." M.G.L. 93A, § 9 permits any consumer injured by a violation of M.G.L. c. 93A, § 2 to bring a civil action, including a class action, for damages and injunctive relief.

109.    As alleged more fully herein, Defendant has violated c. 93A, § 2 by falsely labeling Products as "All Natural" that are not "all natural" because they contain ingredients sourced from genetically modified crops, heavily processed, synthetic, and/or artificial ingredients that are not all natural.

110.    Pursuant to M.G.L. ch. 93A, § 9, Plaintiffs DiFrancesco and Mizzoni, on behalf of themselves and the Massachusetts Class, seek an order:

a.      enjoining Defendant from continuing to engage in, use, or employ any of the unfair and/or deceptive business acts or practices set forth in detail above; and

b.      disgorging and restoring all monies that may have been acquired by Defendant as a result of such unfair and/or deceptive acts or practices.

111.    Plaintiffs DiFrancesco and Mizzoni and members of the Massachusetts Class will be irreparably harmed and/or denied an effective and complete remedy if such an order is not granted.

112.    The unfair and deceptive acts and practices of Defendant, as described above, present a serious threat to Plaintiffs DiFrancesco and Mizzoni and members of the Massachusetts Class.

113.    Plaintiffs DiFrancesco and Mizzoni sent Defendant a demand letter pursuant to ch. 93A, §9(3), on December 30, 2014 and again on February 17, 2015.  Defendant has refused to provide all of the relief requested by Plaintiffs DiFrancesco and Mizzoni on behalf of themselves and the Massachusetts Class, as stated in Defendant's letters dated January 28, 2015 and March 16, 2015.

114.    Based on the foregoing, Plaintiffs DiFrancesco and Mizzoni and the other members of the Massachusetts Class are entitled to all remedies available pursuant to ch. 93A including, but not limited to, refunds, actual damages, or statutory damages in the amount of twenty five dollars per violation, whichever is greater, double or treble damages, attorneys' fees, and other reasonable costs.

115.    Pursuant to M.G.L. c. 231, § 6B, Plaintiffs DiFrancesco and Mizzoni and other

members of the Massachusetts Class are further entitled to pre-judgment interest as a direct and proximate result of Defendant's wrongful conduct.  The amount of damages suffered is a sum certain and capable of calculation and Plaintiffs DiFrancesco and Mizzoni and Massachusetts Class members are entitled to interest in an amount according to proof.

116.    Massachusetts has a strong interest in applying ch. 93A to the conduct at issue here.  Plaintiffs DiFrancesco and Mizzoni are located here, as is the Massachusetts Class, and Defendant advertised, marketed, and sold products in Massachusetts.

**FOURTH CAUSE OF ACTION**
**Violations of Massachusetts General Law ch. 266, §91**
**(By Plaintiffs DiFrancesco and Mizzoni and the Massachusetts Class)**

117.    Plaintiffs DiFrancesco and Mizzoni incorporate all preceding factual allegations as if fully set forth herein.

118.    Defendant's labeling, advertising, marketing, and promotion of the Products is untrue, deceptive and misleading, in violation of Mass. G.L. ch. 266, Section 91.

119.    At all times relevant, Defendant knew or, upon reasonable investigation, could have ascertained that its labeling, advertising, marketing, and promotion of its Products was untrue, deceptive, and misleading.

120.    Defendant's untrue, deceptive, and misleading labeling, advertising, marketing, and promotion of the Products have continued throughout the Class period, and is continuing as of the present date.

121.    As purchasers of the Products who were injured by Defendant's false and misleading advertising (in that Plaintiffs DiFrancesco and Mizzoni and other Massachusetts Class members purchased products that did not conform to the representations made about them by Defendant as set forth above), Plaintiffs DiFrancesco and Mizzoni are entitled to and do bring

this class action to seek all available remedies under Mass. G.L. ch. 266, Section 91, including injunctive relief.  The injunctive relief would include an Order directing Defendant to cease its false and misleading labeling and advertising, retrieve existing false and misleading advertising and promotional materials, and publish corrective advertising.

122.    Plaintiffs DiFrancesco and Mizzoni have lost money and suffered injury in fact as a result of Defendant's conduct because they purchased "All Natural" products but did not receive "All Natural" products.

**FIFTH CAUSE OF ACTION**
**Violation of New York General Business Law § 349 (Deceptive Acts and Practices)**
**(By Plaintiff Marrapodi and the New York Class)**

123.    Plaintiff Marrapodi incorporates all preceding factual allegations as if fully set forth herein.

124.    New York General Business Law § 349 ("GBL § 349") prohibits "deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in [New York]."

125.    As fully alleged above, throughout the Class Period, by advertising, marketing, distributing, and/or selling the Products with claims that they were "All Natural" to Plaintiff Marrapodi and other New York Class members, Defendant engaged in, and continue to engage in, deceptive acts and practices because the Products contain ingredients sourced from genetically modified crops, heavily processed, synthetic, and/or artificial ingredients that are not natural.

126.    Plaintiff Marrapodi and other New York Class members seek to enjoin such unlawful, deceptive acts and practices as described above.  Each of the New York Class members will be irreparably harmed unless the unlawful, deceptive actions of Defendant are

31

enjoined in that Defendant will continue to falsely and misleadingly advertise the "All Natural" nature of the Products.

127.   Plaintiff Marrapodi believed Defendant's representations that the Products she purchased were "All Natural."  Plaintiff Marrapodi would not have purchased the Products had she known the Products were not "All Natural" because they contained ingredients sourced from genetically modified crops, heavily processed, synthetic, and/or artificial ingredients that are not all natural.

128.   Plaintiff Marrapodi was injured in fact and lost money as a result of Defendant's conduct of improperly describing the Products as "All Natural."  Plaintiff Marrapodi paid for "All Natural" products, but did not receive such products.  The products Plaintiff Marrapodi and New York Class members received were worth less than the products for which they paid.

129.   Plaintiff Marrapodi and New York Class members seek declaratory relief, restitution for monies wrongfully obtained, disgorgement of ill-gotten revenues and/or profits, injunctive relief, enjoining Defendant from continuing to disseminate their false and misleading statements, and other relief allowable under GBL § 349.  Plaintiff Marrapodi and New York Class members also request an order requiring Defendant to perform a corrective advertising campaign.

**SIXTH CAUSE OF ACTION**
**Violation of New York General Business Law § 350 (False Advertising)**
**(By Plaintiff Marrapodi and the New York Class)**

130.   Plaintiff Marrapodi incorporates all preceding factual allegations as if fully set forth herein.

131.   New York General Business Law § 350 ("GBL § 350") makes "[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service" in New

York unlawful. GBL § 350 defines "false advertising," in relevant part, as "advertising, including labeling, of a commodity . . . if such advertising is misleading in a material respect."

132.   Throughout the Class Period, by advertising, marketing, distributing, and/or selling the Products with claims that they were "All Natural" to Plaintiff Marrapodi and other New York Class members, Defendant violated GBL § 350 by engaging in, and they continue to violate GBL § 350 by continuing to engage in, false advertising concerning the composition of the Products that contain ingredients sourced from genetically modified crops, heavily processed, synthetic, and/or artificial ingredients that are not all natural.

133.   Plaintiff Marrapodi and other New York Class members seek to enjoin such unlawful acts and practices as described above.  Each of the New York Class members will be irreparably harmed unless the unlawful actions of Defendant are enjoined in that Plaintiff Marrapodi will continue to be unable to rely on Defendant's representations that the Products are "All Natural."

134.   Plaintiff Marrapodi believed Defendant's representations that the Products were "All Natural."  Plaintiff Marrapodi relied on Defendant's representations and would not have purchased the Products had she known the Products contained that contain ingredients sourced from genetically modified crops, heavily processed, synthetic, and/or artificial ingredients that are not all natural.

135.   Plaintiff Marrapodi was injured in fact and lost money as a result of Defendant's conduct of improperly describing the Products as "All Natural."  Plaintiff Marrapodi paid for "All Natural" products, but did not receive such products.  The Products that Plaintiff Marrapodi received were worth less than the Products for which they paid.

136.   Plaintiff Marrapodi and New York Class members seek declaratory relief,

restitution for monies wrongfully obtained, disgorgement of ill-gotten revenues and/or profits, injunctive relief, enjoining Defendant from continuing to disseminate its false and misleading statements, and other relief allowable under New York General Business Law § 350.  Plaintiff Marrapodi and New York Class members also request an order requiring Defendant to perform a corrective advertising campaign.

**SEVENTH CAUSE OF ACTION**
**Unjust Enrichment**
**(By Plaintiffs DiFrancesco and Mizzoni and the Nationwide Class**
**Or, Alternatively, the Massachusetts Class)**
**(Pleaded in the Alternative)**

137.    Plaintiffs DiFrancesco and Mizzoni incorporate all preceding factual allegations as if fully set forth herein.

138.    Plaintiffs DiFrancesco and Mizzoni assert this claim in the alternative in the event that the Court concludes that Plaintiffs DiFrancesco and Mizzoni lack an adequate remedy at law.

139.    Plaintiffs DiFrancesco and Mizzoni bring this claim individually, as well as on behalf of members of the Nationwide Class pursuant to Massachusetts law.  Although there are numerous permutations of the elements of the unjust enrichment cause of action in the various states, there are few real differences.  In all states, the focus of an unjust enrichment claim is whether the defendant was unjustly enriched.  At the core of each state's law are two fundamental elements – the defendant received a benefit from the plaintiff and it would be inequitable for the defendant to retain that benefit without compensating the plaintiff.  The focus of the inquiry is the same in each state.  Since there is no material conflict relating to the elements of unjust enrichment between the different jurisdictions from which class members will be drawn, Massachusetts law may be applied to the claims of the Nationwide Class.

140.    In the alternative, Plaintiffs DiFrancesco and Mizzoni bring this claim individually as well as on behalf of the Massachusetts Class under Massachusetts law.

141.    At all times relevant hereto, Defendant deceptively labeled, marketed, advertised, and sold its "All Natural" Products to Plaintiffs DiFrancesco and Mizzoni and the Classes.

142.    Plaintiffs DiFrancesco and Mizzoni and members of the Classes conferred upon Defendant non-gratuitous payments for the Products that they would not have due to Defendant's deceptive labeling, advertising, and marketing.  Defendant accepted or retained the non-gratuitous benefits conferred by Plaintiffs DiFrancesco and Mizzoni and members of the Classes, with full knowledge and awareness that, as a result of Defendant's deception, Plaintiffs DiFrancesco and Mizzoni and members of the Classes were not receiving a product of the quality, nature, fitness, or value that had been represented by Defendant and reasonable consumers would have expected.

143.    Defendant has been unjustly enriched in retaining the revenues derived from purchases of Defendant's Products by Plaintiffs DiFrancesco and Mizzoni and members of the Classes, which retention under these circumstances is unjust and inequitable because Defendant misrepresented that its Products are "All Natural" when they are not, which caused injuries to Plaintiff DiFrancesco and Mizzoni and members of the Classes because they paid a price premium due to the mislabeling of the Products.

144.    Retaining the non-gratuitous benefits conferred upon Defendant by Plaintiffs DiFrancesco and Mizzoni and members of the Classes under these circumstances made Defendant's retention of the non-gratuitous benefits unjust and inequitable.  Thus, Defendant must pay restitution to Plaintiffs DiFrancesco and Mizzoni and members of the Classes for their unjust enrichment, as ordered by the Court.

## EIGHTH CAUSE OF ACTION
### Unjust Enrichment
### (By Plaintiff Marrapodi and the Nationwide Class
### Or, Alternatively, the New York Class)
### (Pleaded in the Alternative)

145.     Plaintiff Marrapodi incorporates all preceding factual allegations as if fully set

forth herein.

146.     Plaintiff Marrapodi asserts this claim in the alternative in the event that the Court

concludes that Plaintiff Marrapodi lacks an adequate remedy at law.

147.     Plaintiff Marrapodi brings this claim individually, as well as on behalf of

members of the Nationwide Class pursuant to New York law.  Although there are numerous

permutations of the elements of the unjust enrichment cause of action in the various states, there

are few real differences.  In all states, the focus of an unjust enrichment claim is whether the

defendant was unjustly enriched.  At the core of each state's law are two fundamental elements –

the defendant received a benefit from the plaintiff and it would be inequitable for the defendant

to retain that benefit without compensating the plaintiff.  The focus of the inquiry is the same in

each state.  Since there is no material conflict relating to the elements of unjust enrichment

between the different jurisdictions from which class members will be drawn, New York law may

be applied to the claims of the Nationwide Class.

148.     In the alternative, Plaintiff Marrapodi brings this claim individually as well as on

behalf of the New York Class under New York law.

149.     At all times relevant hereto, Defendant deceptively labeled, marketed, advertised,

and sold its "All Natural" Products to Plaintiff Marrapodi and the Classes.

150.     Plaintiff Marrapodi  and members of the Classes conferred upon Defendant non-

gratuitous payments for the Products that they would not have due to Defendant's deceptive

labeling, advertising, and marketing.  Defendant accepted or retained the non-gratuitous benefits conferred by Plaintiff Marrapodi  and members of the Classes, with full knowledge and awareness that, as a result of Defendant's deception, Plaintiff Marrapodi  and members of the Classes were not receiving a product of the quality, nature, fitness, or value that had been represented by Defendant and reasonable consumers would have expected.

151.    Defendant has been unjustly enriched in retaining the revenues derived from purchases of Defendant's Products by Plaintiff Marrapodi  and members of the Classes, which retention under these circumstances is unjust and inequitable because Defendant misrepresented that its Products are "All Natural" when they are not, which caused injuries to Plaintiff Marrapodi and members of the Classes because they paid a price premium due to the mislabeling of the Products.

152.    Retaining the non-gratuitous benefits conferred upon Defendant by Plaintiff Marrapodi and members of the Classes under these circumstances made Defendant's retention of the non-gratuitous benefits unjust and inequitable.  Thus, Defendant must pay restitution to Plaintiff Marrapodi and members of the Classes for their unjust enrichment, as ordered by the Court.

**REQUEST FOR RELIEF**

**WHEREFORE**, Plaintiffs, individually and on behalf of the other members of the Classes proposed in this Complaint, respectfully request that the Court enter judgment in their favor and against Defendant, as follows:

A.     Declaring that this action is a proper class action, certifying the Classes as requested herein, designating Plaintiffs as Class Representatives and appointing the undersigned counsel as Class Counsel;

B.      Ordering Defendant to pay actual damages (and no less than the statutory minimum damages) and equitable monetary relief to Plaintiffs and the other members of the Classes;

C.      Ordering Defendant to pay punitive damages, as allowable by law, to Plaintiffs and the other members of these Classes;

D.      Ordering Defendant to pay statutory damages, as allowable by the statutes asserted herein, to Plaintiffs and the other members of these Classes;

E.      Awarding injunctive relief as permitted by law or equity, including enjoining Defendant from continuing the unlawful practices as set forth herein, and ordering Defendant to engage in a corrective advertising campaign;

F.      Ordering Defendant to pay attorneys' fees and litigation costs to Plaintiffs and the other members of the Classes;

G.      Ordering Defendant to pay both pre- and post-judgment interest on any amounts awarded; and

H.      Ordering such other and further relief as may be just and proper.

## JURY DEMAND

Plaintiffs demand a trial by jury of all claims in this Complaint that are so triable.

Dated: March 16, 2014                    Respectfully submitted,

                                         By: /s/ Tina Wolfson
                                         Tina Wolfson (admitted *pro hac vice*)
                                         AHDOOT & WOLFSON, PC
                                         1016 Palm Avenue
                                         West Hollywood, California 90069
                                         Tel: (310) 474-9111; Fax: (310) 474-8585
                                         Email: twolfson@ahdootwolfson.com

                                         Erica C. Mirabella (MA Bar No. 676750)
                                         MIRABELLA LAW

132 Boylston Street, 5th Floor
Boston, MA 02116
Tel: (617) 580-8270; Fax: (617) 583-1905
Email: erica@mirabellaLLC.com

Nick Suciu III (admitted *pro hac vice*)
BARBAT, MANSOUR & SUCIU PLLC
434 West Alexandrine #101
Detroit, Michigan 48201
Tel: (313) 303-3472
Email: nicksuciu@bmslawyers.com

*Counsel for Plaintiffs and the Proposed Classes*

## <u>CERTIFICATE OF SERVICE</u>

I, Tina Wolfson, counsel for Plaintiffs Matt DiFrancesco, Angela Mizzoni, and Lynn Marrapodi, hereby certify that, on March 16, 2015, I electronically filed the foregoing First Amended Class Action Complaint with the Clerk of the Court using the CM/ECF System, which will send notification of such filing to all counsel of record.

By:   <u>/s/ Tina Wolfson</u>
        Tina Wolfson