# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF MASSACHUSETTS

MATT DIFRANCESCO, ANGELA MIZZONI, and LYNN
MARRAPODI, individually and on behalf of all others
similarly situated,

                                 Plaintiffs,

   v.

UTZ QUALITY FOODS, INC.,

                                 Defendant.

Civil Action No. 1:14-CV-14744-DPW

## **PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

## TABLE OF CONTENTS

I.      INTRODUCTION --------------------------------------------------------------------1

II.     SUMMARY OF LITIGATION, INVESTIGATION, AND SETTLEMENT -----2

III.    THE PROPOSED SETTLEMENT -------------------------------------------------5

        A.  Settlement Benefits: Payments to Proposed Class Members
            and Injunctive Relief ---------------------------------------------------------5

        B.  Dissemination of Notice to the Class ---------------------------------------7

        C.  Service Awards to Class Representatives and Attorneys'
            Fees and Expenses -------------------------------------------------------------8

        D.  Release Provisions -------------------------------------------------------------8

        E.  Opt-Out Procedure and Opportunity to Object ------------------------------8

IV.     THE CLASS SHOULD BE CERTIFIED FOR SETTLEMENT PURPOSES ---9

        A.  This Action Satisfies the Requirements of Fed. R. Civ. P. 23(a) ----------------10

        B.  The Predominance and Superiority Requirements
            Fed. R. Civ. P. 23(b)(3) are Satisfied --------------------------------------12

V.      THE COURT SHOULD PRELIMINARILY APPROVE THE PROPOSED
        SETTLEMENT ----------------------------------------------------------------------13

        A.  The Settlement is Fair, Reasonable, and Adequate -------------------------------14

        B.  The Settlement Provides for a Fair Allocation of Relief to All
            Proposed Class Members and Presents No Deficiencies ------------------------16

VI.     THE PROPOSED FORM AND METHOD OF NOTICE IS THE BEST
        NOTICE PRACTICABLE AND SHOULD BE APPROVED ----------------------17

VII.    CONCLUSION -----------------------------------------------------------------------19

# **TABLE OF AUTHORITIES**

### CASES

*Amchem Products, Inc. v. Windsor*, 521 U.S. 591 (1997)--------------------------------------------------------------- 9, 10, 12

*In re AT&T Mobility Wireless Data Servs. Sales Litig.*, 270 F.R.D. 330 (N.D. Ill. 2010)---------------------------------- 9

*Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974) ----------------------------------------------------------------------- 17

*Faherty v. CVS Pharm., Inc.*, No. 09-CV-12102, 2011 U.S. Dist. LEXIS 23547 (D. Mass. Mar. 9, 2011)------------ 10

*George v. National Water Main Cleaning Co.*, 286 F.R.D. 168 (D. Mass. 2012) ------------------------------------------ 11

*Greenspun v. Bogan*, 492 F.2d 375 (1st Cir. 1974) ------------------------------------------------------------------------- 17

*Guckenberger v. Boston Univ.*, 957 F. Supp. 306 (D. Mass. 1997)-------------------------------------------------------- 10

*Hotel Holiday Inn de Isla Verde v. N.L.R.B.*, 723 F.2d 169 (1st Cir. 1983) -------------------------------------------- 13

*In re Evergreen Ultra Short Opportunities Fund Secs. Litig.*, 275 F.R.D. 382 (D. Mass. 2011) ------------------------ 11

*In re Lupron(R) Mktg. & Sales Practices Litig.*, 228 F.R.D. 75 (D. Mass. 2005) ------------------------------------ 10, 14

*In re Lupron(R) Mktg. & Sales Practices Litig.*, 345 F. Supp. 2d 135 (D. Mass. 2004) ------------------------------- 14

*In re M3 Power Razor*, 270 F.R.D. 45 (D. Mass. 2010)------------------------------------------------------- 11, 12, 13, 14

*In re Relafen Antitrust Litig.*, 231 F.R.D. 52 (D. Mass. 2005)----------------------------------------------------- 12, 14

*Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306 (1950) ------------------------------------------------------ 17

*Rolland v. Cellucci*, 191 F.R.D. 3 (D. Mass. 2000) ------------------------------------------------------------------------- 15

*Swack v. Credit Suisse First Boston*, 230 F.R.D. 250 (D. Mass. 2005) -------------------------------------------------- 11

*United States v. Comunidades Unidas Contra La Contaminacion*, 204 F.3d 275 (1st Cir. 2000)----------------------- 14

### RULES

Fed. R. Civ. P. 23 ----------------------------------------------------------------------------------------------------- 9, 11, 13, 17

## I.       INTRODUCTION

Pursuant to the terms and conditions of the Settlement Agreement filed concurrently herewith ("Settlement", "Agreement", or "Stip.")[1], Plaintiffs respectfully seek preliminary approval of a proposed nationwide settlement of this consumer class action between Plaintiffs Matt DiFrancesco, Angela Mizzoni, and Lynn Marrapodi ("Plaintiffs") and Defendant Utz Quality Foods, LLC f/k/a Utz Quality Foods, Inc. ("Defendant" or "Utz"), arising out of the Defendant's labeling, manufacturing, distribution, sale, marketing, promotion or advertising of the Eligible Products.[2]  The Settlement results in cash refunds for those proposed Class Members who submit Claims, provided that their claims are determined by the Settlement Administrator to be otherwise valid and, for injunctive relief. (Stip. §§ IV.D. & IV.F.)

Under the proposed Settlement, a One Million Two Hundred and Fifty Thousand Dollar ($1,250,000.00) fund will be created to refund money to proposed Class Members. (*Id*. § IV.A.1.) Notice (including notice pursuant to 28 U.S.C. §1715) and administration costs will be paid out of the fund. (*Id*. § IV.A.2.) Class Counsel's attorneys' fees and reasonable litigation-related expenses incurred up to the submission of the application to the Court prior to the Fairness Hearing, in an amount to be determined and approved by the Court, will be paid from the Settlement Fund. (*Id*.) Court-approved Service Awards to Class Representatives will also be paid from the Settlement Fund. (*Id*.)

Proposed Class Members who submit timely and proper Claim Forms will receive a payment of Two Dollars and No Cents ($2.00) per Qualifying Purchase up to a maximum of Twenty Dollars and No Cents ($20.00) per household (the "Initial Claim Amount"), subject to

---

[1]      Unless otherwise defined herein, all capitalized terms have the same meaning as set forth in the Settlement Agreement, filed concurrently herewith.

[2]      Eligible Products is defined and listed in Section II.A. Paragraph 16 of the Agreement.

the adjustments set forth in Section IV.E.1, provided that their claims are determined by the

Settlement Administrator to be otherwise valid. (*Id*. IV.D.) Moreover, subject to the terms set

forth Section IV.F.1.-4., the Settlement further provides for Defendant's cessation of the terms

"Natural" and "All Natural" from the Eligible Products' advertising and labeling for a period of

three years.   The proposed Settlement will fully and finally resolve the claims of Plaintiffs and

other proposed Class Members.  Should individual proposed Class Members desire an alternate

form of relief other than that provided in the Settlement, they will be given the right to opt out of

the Settlement and pursue such relief. (Stip. § VI.A.)

The Class is defined as:

> *All persons who, during the Class Period, purchased in the United States any of the Eligible Products. Excluded from the Class are: (a) Utz's board members or executive-level officers; (b) persons who purchased the Eligible Products primarily for the purpose of resale, including, but not limited to, retailers or re-sellers of the Eligible Products; (c) governmental entities; (d) persons who timely and properly exclude themselves from the Class as provided in [the] Agreement; and (e) the Court, the Court's immediate family, and Court staff.*

> *"Eligible Products" means any and all products of any size, style, flavor and variety containing the Utz or Bachman brand which are or were labeled with the word "Natural," or phrases "All Natural," "non-GMO," "not synthetic," or any other words or phrases to convey the same or similar meanings, including without limitation, the products listed in Section II.A.16 of the Settlement Agreement.*

> *"Class Period" means the period from December 30, 2010, up to and including the date of the first dissemination of the Summary Settlement Notice or Class Notice, whichever is earlier.*

(*Id*. § II.A.9, 13, 16.)

## II.    SUMMARY OF LITIGATION, INVESTIGATION, AND SETTLEMENT

Class Counsel began investigating the facts underlying this matter months before the

Action was filed. Class Counsel (i) reviewed and analyzed Defendant's advertising and labeling,

(ii) gathered any available substantiation and research relating to the claims made in the subject

advertising, and (iii) conducted an independent investigation of the scientific and factual basis for the claims in the advertising of Defendant's snack foods. These efforts included evaluation of the relevant law, facts, and allegations to assess the merits of the claims and potential claims and to determine the strength of anticipated defenses in the action. (Stip. § I.D; Declaration of Tina Wolfson, filed concurrently herewith ("Wolfson Decl.") ¶ 8.)

Utz's marketing campaign is the focal point of the class action complaint (including the subsequent amendment thereto) in the instant case, entitled *DiFrancesco*, *et al. v. Utz Quality Foods, Inc.*, No. 1:14-CV-14744-DWP (D. Mass.), and initially filed on December 30, 2014 in the United States District Court for the District of Massachusetts (the "Action"). Plaintiffs allege, *inter alia*, that Utz manufactured, marketed, and sold various snack foods and that through a nationwide advertising campaign, Utz sold its products by advertising that they were "All Natural." Plaintiffs challenge these advertisements, asserting, *inter alia*, that Defendant's products are not "All Natural" in that they contain ingredients that are chemically derived, heavily processed, synthetic, and/or artificial, and/or ingredients containing and/or derived from Genetically Modified Organisms ("GMO"). Plaintiffs alleged that Utz breached the express warranty created by the "All Natural" claim, that Utz was unjustly enriched, and that Utz violated Mass. Gen. Law ch. 93A and ch. 266, § 91 and New York Gen. Bus. Law ("GBL") §§ 349 and 350. (Stip. § I.A; Wolfson Decl. ¶ 5.) Defendant has denied and continues to deny all liability with respect to any and all of the claims alleged in the Action or the facts alleged in support thereof and has denied and continues to deny all charges of wrongdoing or liability against it arising out of or relating to any conduct, acts, or omissions alleged in the Action. (Stip. § I.C.)

The Parties engaged in extensive litigation prior to reaching a resolution. The Court

considered and ruled on matters including (i) Defendant's Motion to Dismiss the First Amended

Complaint (FAC), (ii) the Parties' stipulation for a Protective Order, and (iii) motions and

stipulations regarding scheduling and deadlines. (Wolfson Decl. ¶¶ 6-7.) In addition, the Parties

engaged in extensive discovery. Through negotiation, the Parties reached an agreement as to a

schedule for discovery. On July 10, 2015, Plaintiff served on Utz a total of 117 requests for

production and thirty (30) interrogatories. On August 28, 2015, Plaintiffs served on Utz a total of

fifty-four (54) requests for admission. This resulted in Defendant's production of written

responses and over 2,200 pages of documents in electronic form, which were thoroughly

reviewed by Plaintiffs' Counsel. Similarly, On July 15, 2015, Utz served a total of thirty-six (36)

interrogatories, sixty-nine (69) requests for production and twenty-seven (27) requests for

admission. Plaintiffs served written responses and produced a total of 879 pages of documents.

(Stip. § I.E; Wolfson Decl. ¶ 10.)

Despite this extensive litigation, the Parties also commenced the settlement process early.

Settlement discussions between Defense Counsel and Class Counsel began in or about

September 2015. (Wolfson Decl. ¶ 11.) After numerous settlement discussions between counsel,

the Parties engaged in a mediation session with the Honorable Peter Lichtman (Ret.) of JAMS on

November 16, 2015. Utz produced additional documents in anticipation of the mediation session

to permit Plaintiffs and Class Counsel to evaluate the claims and potential defenses and to

meaningfully conduct informed settlement discussions. In connection with the Parties'

mediation, Plaintiffs obtained discovery regarding: (i) product packaging throughout the Class

Period; (ii) the use of the phrases "Natural" and "All Natural" on product labels; and (iii) sales

and retail sales data, including the total amount of wholesale revenue, by product type,

throughout the Class Period. Plaintiffs also produced to Utz additional information regarding

Plaintiffs' purchases of the Products. After the mediation, the Parties continued to engage in a long series of arms-length and vigorously-contested negotiations before finally reaching a settlement in principal. (Stip. § I.F; Wolfson Decl. ¶¶ 11-12.)

After the Parties agreed to the essential settlement terms, they began memorializing and negotiating the details of the Settlement Agreement. This began another round of comprehensive negotiations in which each aspect of the Settlement Agreement, including each of the eight exhibits, were discussed at length. During this process, a class action notice specialist was engaged to advise the Parties as to specifics of a Notice program. The Notice program and each document comprising the Notice were designed to make them easy to read and understand and to maximize the likelihood of broad proposed Class Member participation in the Claims process. (Wolfson Decl. ¶ 13; Declaration of Steve Weisbrot, filed concurrently herewith ("Weisbrot Decl.") at ¶ 24.)

## III.  THE PROPOSED SETTLEMENT

### A.  Settlement Benefits: Payments to Proposed Class Members and Injunctive Relief

*First*, under the Settlement, Defendant will create a $1.25 million fund (the "Settlement Fund") for the benefit of the proposed Class. (Stip. §§ II.A.34, IV.A.1.) Proposed Class Members who submit a Claim Form and purchased any of the Eligible Products during the Class Period are eligible to receive an amount of Two Dollars and No Cents ($2.00) per Qualifying Purchase up to a maximum of Twenty Dollars and No Cents ($20.00) per household (the "Initial Claim Amount"), subject to the adjustments set forth below. (*Id.* § IV.D, IV.E.)  Proposed Class Members may recover a monetary refund by timely submitting a Claim Form (attached as Exhibit 1 to the Settlement) either online at a website specifically set up for the Settlement

(www.UtzSettlement.com), or by U.S. Mail. (Stip. §§ IV.C., V.D.) Proposed Class Members

must submit Claims because Defendant generally does not have their addresses, as the Eligible

Products were primarily sold to consumers through retail establishments.

Although the Parties anticipate the Settlement Fund is large enough to pay all anticipated

claimants the amount claimed by each, if the total amount of approved Claims exceeds the total

amount available for distribution, each claim will be reduced on a *pro rata* basis, such that the

aggregate value of the cash payments pursuant to valid Claims does not exceed the Settlement

Fund Balance. (Stip. § IV.E.1.) Accordingly, the actual amount recovered by each proposed

Class Member will not be determined until after the Claim Period has ended and all Claim Forms

have been received, and may not be determined until after the Final Settlement Date. (*Id*.)

If there are any funds remaining in the Settlement Fund Balance after the Claim program

has been completed ("Residual Funds"), including, but not limited to, any funds remaining in the

Settlement Fund Balance after all Claims have been paid or un-cashed distributions made

payable to eligible proposed Class Members, the Settlement Administrator shall distribute the

Residual Funds to the following non-profit organization: Consumers Union

(www.consumersunion.org). (Stip. § IV.E.3.)

The recipient of the Residual Fund should be an organization "'whose interests

reasonably approximate those being pursued by the class." *In Re Lupron*, 677 F.3d 21, 33 (1st

Cir. 2012) (adopting the "reasonable approximation test").  As demonstrated in the Declaration

of Elisa Odabashian, Director of the West Coast Office, Southwest Office and State Campaigns

for Consumer Union, filed concurrently herewith ("Odabashian Decl."), Consumer Union's

activities relate directly to "the purposes of the underlying statutes claimed to have been violated,

the nature of the injury to the class members, the characteristics and interests of the class

members, the geographical scope of the class." *Id.* ¶¶ 2, 4.  Thus, there is a close fit of the interests being pursued by the Class and Consumers Union.

None of the Settlement Fund, including any Residual Funds, will revert to Defendant. (Stip. § IV.E.3.)

*Second*, the Settlement requires Defendant to undertake and implement significant and substantial changes to its advertising, and labeling of the Eligible Products. These changes are detailed in section IV.F.1. of the Settlement.

## B.    Dissemination of Notice to the Class

The Parties have developed a comprehensive Notice program with input from Angeion, a company that specializes in developing class action notice plans. Because the Eligible Products are most typically sold over the counter at retail stores, Defendant does not have mailing addresses for the overwhelming majority of the proposed Class Members. (Wolfson Decl. ¶ 14.)) Consequently, at the center of the Notice program is the Settlement Website, which will be specifically set up for this Settlement ("Settlement Website"). (Weisbrot Decl. ¶ 18.) The Settlement Website will provide information about the Settlement, proposed Class Member rights, important dates and deadlines, and a Claim Form that proposed Class Members can submit online. (*Id.* §§ IV.C.3, V.D.) The details of the Notice program, including the methodology underlying its design, are further explained in the Declaration of Steve Weisbrot, Esq., Executive Vice President of Notice and Strategy at Angeion, filed concurrently herewith. Steve Weisbrot is an expert in the dissemination of class action notices and has designed and supervised over one hundred nationwide notice campaigns. (Weisbrot Decl. ¶ 1.)

The Settlement will also be publicized through the use of Internet "banner ads." (Stip. § V.D; Weisbrot Decl. ¶¶ 8, 14-17.) Banner ads are short, Internet-based advertisements designed

to attract attention. When presented with such an ad, an interested Internet user need only click on the banner ad and immediately will be re-directed to the Settlement Website.

All expenses related to Notice and Claims administration will be paid from the Settlement Fund. (Stip. § IV.A.2.) Angeion has agreed that it will not charge more than $350,000 to disseminate the Notice and administer the settlement. (Weisbrot Decl." ¶ 29).

### C.   Service Awards to Class Representatives and Attorneys' Fees and Expenses

Class Counsel may petition the Court for a Service Award for each of the three representative Plaintiffs (of up to $5,000 each, as awarded by the Court), which will be deducted from the Settlement Fund. (Stip. § IV.A.2.) Class Counsel will make an application to the Court for an award of reasonable attorneys' fees and expenses incurred up to the submission of the application to the Court prior to the Fairness Hearing, which shall be paid out of the Settlement Fund. (*Id*. ¶ IX.B.) There is no agreement between the Parties as to the amount of the attorneys' fees and expenses to be applied for.

### D.   Release Provisions

If the Court grants final approval of the proposed Settlement, Settlement Class Members will be deemed to have released Defendant of all claims, known or unknown, that were asserted or could have been asserted in the litigation except for claims of personal injuries. (*Id.*, § II.A.27. II.A.28.)  The Released Claims are tied to the labeling, advertising, and purchase of the Eligible Products and the claims alleged in this lawsuit. (*Id.*)

### E.   Opt-Out Procedure and Opportunity to Object

Any proposed Class Member may opt out of the Settlement by sending to the Settlement Administrator a personally signed letter via U.S. Mail including his or her name, and providing a clear statement communicating that he or she elects to be excluded from the Class.  (*Id*. § VI.A.)

Such requests must be postmarked on or before the Opt-Out Deadline. (*Id.*) Any proposed Class

Member who does not request to be excluded may object to the Settlement and/or the

applications for Service Awards or Attorneys' Fees and Expenses. (*Id.* § VII.A.) An objection

must be filed with the Court no later than the objection deadline specified in the Preliminary

Approval Order, and must be a written statement of the objections, as well as the specific

reason(s), if any, for each objection, including any legal support the proposed Class Member

wishes to bring to the Court's attention, any evidence or other information the proposed Class

Member wishes to introduce in support of the objection, and a statement of whether the proposed

Class Member intends to appear and argue at the Fairness Hearing. (*Id.*)

## IV.      THE CLASS SHOULD BE CERTIFIED FOR SETTLEMENT PURPOSES

Federal Rule of Civil Procedure 23(e) requires judicial approval for any compromise of a

class action.  Plaintiffs respectfully submit that such approval is warranted here, but, at this time,

seek only preliminary approval of the settlement, so that notice and an opportunity to be heard

can be provided to the proposed Class Members.  Although these requirements must be satisfied,

"[t]he fact that the parties have reached a settlement is a relevant consideration in the class-

certification analysis."  *See In re AT&T Mobility Wireless Data Servs. Sales Litig.*, 270 F.R.D.

330, 340 (N.D. Ill. 2010) (citations omitted).

Where a court is passing on the certification question in the context of a proposed

settlement class, questions regarding the manageability of the case for trial purposes are not

considered. *See Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 620 (1997) ("Confronted with

a request for settlement-only class certification, a district court need not inquire whether the case,

if tried, would present intractable management problems, *see* Fed. Rule Civ. Proc. 23(b)(3)(D),

for the proposal is that there be no trial."). Nonetheless, the remaining requirements under Rule

23 must still be met in settlement-only certification situations. *Id.* at 621-22. As demonstrated

below, the Class readily satisfies Rule 23 and should be certified for settlement purposes.[3]

### A.      This Action Satisfies the Requirements of Fed. R. Civ. P. 23(a)

Rule 23(a) enumerates four prerequisites for class certification, commonly referred to as:

(1) numerosity; (2) commonality; (3) typicality; and (4) adequacy. *Id.* at 613. Each of these

requirements is met here.

*The Class Is Numerous:* Here, the proposed class includes thousands of persons,

geographically dispersed throughout the United States, who purchased the Eligible Products

(Wolfson Decl. ¶ 14). Joinder of all proposed Class Members is plainly impractical, and the

numerosity requirement of Rule 23(a)(1) numerosity is satisfied.

*The Action Presents Common Questions:* "The threshold of commonality, is not high." *In*

*re Lupron(R) Mktg. & Sales Practices Litig.*, 228 F.R.D. 75, 88 (D. Mass. 2005) (*internal*

*citation omitted*); *Faherty v. CVS Pharm., Inc.*, No. 09-CV-12102, 2011 U.S. Dist. LEXIS

23547, at *4 (D. Mass. Mar. 9, 2011). "[T]he rule requires only that resolution of the common

questions affect all or a substantial number of class members." *In re Lupron(R)*, 228 F.R.D. at

88; *see also Guckenberger v. Boston Univ.*, 957 F. Supp. 306, 325 (D. Mass. 1997) (noting that

Rule 23 does not require that all class members "share identical claims," but rather that "claims

be common, and not in conflict."). Here, common questions include whether Defendant

communicated the "All Natural" advertising message about the Eligible Products through its

marketing and advertising campaign, and whether that advertising message is factually true or

---

[3]      The Defendant maintains that there remain substantial obstacles to certification of a
litigation class under Federal Rule of Civil Procedure Rule 23, and that any certification of a
preliminary or final settlement class is for settlement purposes only and shall not constitute, nor
be construed as, an admission, concession or acknowledgment by Defendant that the Action or
any other proposed action is certifiable if litigated. (Stip., § XII.T.)

false, and likely to deceive consumers.

*Plaintiffs' Claims Are Typical:* "To establish typicality, the plaintiffs need only demonstrate that the claims or defenses of the class and the class representative arise from the same event or pattern or practice and are based on the same legal theory." *In re M3 Power Razor*, 270 F.R.D. 45, 54-55 (D. Mass. 2010) (citation omitted); *Swack v. Credit Suisse First Boston*, 230 F.R.D. 250, 260 (D. Mass. 2005) ("As with the commonality requirement, the typicality requirement does not mandate that the claims of the class representative be identical to those of the absent class members."). Factual distinctions between the plaintiffs and class members' claims will not destroy typicality as long as they have the "same essential characteristics." *George v. National Water Main Cleaning Co.*, 286 F.R.D. 168, 176 (D. Mass. 2012). Defendant exposed Plaintiffs and the other proposed Class Members to the same marketing message to induce proposed Class Members to purchase the Eligible Products. Plaintiffs seek to obtain the same relief pursuant to the same legal theories as those of the other proposed Class Members. Plaintiffs' claims are the same as those of the other proposed Class Members. Therefore, the typicality requirement is met.

*The Interests of the Class Are Adequately Protected:* Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Adequacy is satisfied where (i) counsel for the class is qualified and competent to vigorously prosecute the action, and (ii) the interests of the proposed class representatives are not antagonistic to the interests of the Class. *See In re Evergreen Ultra Short Opportunities Fund Secs. Litig.*, 275 F.R.D. 382, 391 (D. Mass. 2011). The adequacy requirement is met here. First, proposed Class Counsel are qualified and experienced in litigating and settling class actions, including false advertising cases. They have demonstrated expertise in handling all aspects of

complex litigation and class actions, and are well qualified to represent the Class. (Wolfson Decl. ¶ 2.) Finally, there is no conflict between the Plaintiffs' interests and the interests of the other proposed Class Members because all proposed Class Members are "seeking redress from what is essentially the same injury." *In re M3 Power Razor*, 270 F.R.D. 45, 55 (D. Mass. 2010). Plaintiffs' interests are perfectly aligned with the interests of the Class.

**B.     The Predominance and Superiority Requirements of Fed. R. Civ. P. 23(b)(3) are Satisfied**

"In addition to the Rule 23(a) requirements of numerosity, commonality, typicality, and adequacy of representation, the party seeking to obtain class certification must demonstrate that the action may be maintained under Rule 23(b)(1), (2), or (3)." *In re Relafen Antitrust Litig.*, 231 F.R.D. 52, 68 (D. Mass. 2005) (citations omitted). The Class here satisfies the requirements of Rule 23(b)(3).

*Common Questions of Law and Fact Predominate:* The Rule 23(b)(3) predominance inquiry "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods. v. Windsor*, 521 U.S. 591, 623 (U.S. 1997). In the First Circuit, predominance requires only "a sufficient constellation" of common issues. *In re Relafen Antitrust Litig.*, 231 F.R.D. 52, 70 (D. Mass. 2005) (*citation omitted*).

The predominance requirement is easily satisfied here.  As discussed above, Plaintiffs allege that they and other proposed Class Members are entitled to the same legal remedies based upon the same alleged wrongdoing by Defendant – exposure to the same alleged false and misleading advertising claims. Plaintiffs allege that all of the advertisements on the Eligible Products, including the packaging and related materials, convey the same advertising message – that they are "All Natural." (*See* samples of Eligible Product advertisements, Wolfson Decl., Ex.

B.) The central issues for every claimant are whether Defendant's advertising and marketing campaign conveyed this message to the reasonable consumer and whether the claim is true or substantiated. These two issues predominate because they would have to be decided in every trial brought by individual class members and can be proven or disproven with the same class wide evidence. Under these circumstances, the requirements of Rule 23(b)(3) are satisfied.

*A Class Action is Superior:* Rule 23(b)(3) sets forth the relevant factors for determining whether a class action is superior to other available methods for the fair and efficient adjudication of a controversy. These factors include: (i) the class members' interest in individually controlling separate actions; (ii) the extent and nature of any litigation concerning the controversy already begun by or against class members; (iii) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (iv) the likely difficulties in managing a class action. Fed. R. Civ. P. 23(b)(3).

In a case where there are many class members each with relatively small claims, "a class action is the only feasible mechanism for resolving the dispute efficiently." *In re M3 Power Razor*, 270 F.R.D. 45, 56 (D. Mass. 2010). Under the circumstances presented here, where proposed Class Members may have individual claims of only a couple of dollars, a class action is clearly superior to any other mechanism for adjudicating the case. *Id.* at 56. Second, certification would be superior because concentrating this litigation in one forum would not only prevent the risk of inconsistent outcomes but would also reduce litigation costs and promote greater efficiency.

## V.      THE COURT SHOULD PRELIMINARILY APPROVE THE PROPOSED SETTLEMENT

Public policy highly favors settlement as a means of resolving disputes. *See Hotel*

*Holiday Inn de Isla Verde v. N.L.R.B.*, 723 F.2d 169, 173 n.l (1st Cir. 1983) (internal citation omitted). This is especially so in the context of complex class action litigation. *United States v. Comunidades Unidas Contra La Contaminacion*, 204 F.3d 275, 280 (1st Cir. 2000); *see also, In re Lupron(R) Mktg. & Sales Practices Litig.*, 228 F.R.D. 75, 88 (D. Mass. 2005) ("the law favors class action settlements."). In order to approve a proposed class action settlement, a court generally follows two steps: "First, the judge reviews the proposal preliminarily to determine whether it is sufficient to warrant public notice and a hearing. If so, the final decision on approval is made after the hearing." *In re Relafen Antitrust Litig.*, 231 F.R.D. 52, 57 (D. Mass. 2005) (citation omitted). To preliminarily approve a proposed settlement, a Court must determine whether it "is in the range of fair, reasonable, and adequate" and examine it for "obvious deficiencies." *In re M3 Power Razor Sys. Mktg. & Sales Practice Litig.*, 270 F.R.D. 45, 62 (D. Mass. 2010). Courts presume that a settlement is "within the range of reasonableness" when "(1) the negotiations occurred at arm's length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected." *Id*. at 62-63; *In re Lupron(R) Mktg. & Sales Practices Litig.*, 345 F. Supp. 2d 135, 137 (D. Mass. 2004).

### A.    The Settlement is Fair, Reasonable, and Adequate

The proposed Settlement clearly satisfies the standards for preliminary approval, as set forth in the relevant case law.

*The Settlement Negotiations Occurred at Arm's Length:* The Settlement is the result of intensive and extensive arm's length negotiation between the Parties, arrived at only after numerous, lengthy negotiation sessions spanning over a year, both in-person and telephonic, and with the assistance of the Honorable Peter Lichtman (Ret.) of JAMS as mediator. Even after the

essential Settlement terms were agreed to, not all issues were resolved, and the Settlement

Agreement went through several more versions and drafts before being finalized and executed.

The Settlement is the result of arm's length negotiations between capable and experienced

counsel, and is, therefore, entitled to a presumption of fairness, reasonableness, and adequacy.

*See Rolland v. Cellucci*, 191 F.R.D. 3, 6 (D. Mass. 2000) (giving "strong initial presumption that

the parties' compromise is fair and reasonable" because the issues were contested and the

"settlement was reached after arms-length negotiations").

*Substantial Discovery was Conducted:* "The court is required to ascertain whether

sufficient evidence has been obtained through discovery to determine the adequacy of the

settlement." *Rolland*, 191 F.R.D at 10 (citation omitted). Here, the volume and substance of

Class Counsel's knowledge of this case gained through discovery and otherwise is clearly

adequate to support the proposed Settlement. Class Counsel, who are experienced in prosecuting

this type of action, undertook an extensive investigation, interviewed consumers who purchased

the Eligible Products, gathered and reviewed the advertising and marketing materials at issue,

obtained and analyzed sales and sales-related information regarding the Eligible Products,

obtained and analyzed publicly-available and internal marketing information and engaged in

extensive discovery, as discussed above. Class Counsel also thoroughly analyzed the legal issues

in this case, including Defendant's defenses. Some of these relevant facts and legal issues were

fully briefed in Defendant's Motion to Dismiss Plaintiffs' First Amended Complaint, which was

denied by the Court. Thus, the litigation had advanced to a stage where the Parties certainly had

a clear view of the strengths and weaknesses of their cases.

*The Proponents of the Settlement are Experienced in Similar Litigation:* Courts also

recognize that the opinion of experienced and informed counsel in favor of settlement should be

afforded substantial consideration. *Rolland*, 191 F.R.D. at 10; *see also Bussie v. Allmerica Fin. Corp.*, 50 F. Supp. 2d 59, 77 (D. Mass. 1999). Class Counsel has extensive experience in class action litigation and has successfully litigated false advertising and consumer protection class actions in courts around the country. (Wolfson Decl. ¶ 2 and Ex. A thereto.) Similarly, Defense counsel is comprised of a team of highly skilled and sophisticated lawyers with extensive class action experience and defended Utz vigorously throughout the litigation.

*At this Stage, There are No Objections:* Class Counsel is not aware of any objections at this time. Objections would not be expected before Class Notice is disseminated.

**B.    The Settlement Provides for a Fair Allocation of Relief to All Proposed Class Members and Presents No Deficiencies**

The Settlement Fund of $1.25 million constitutes a fair and reasonable result that will permit all proposed Class Members who submit valid and approved Claims to receive a cash payment. This, coupled with the changes in Defendant's advertisements, compels preliminary approval of this Settlement, particularly when weighed against the strengths and weaknesses of the Parties' positions, and the inherent risks (including the risks of certifying a litigation class), the expenses and costs associated with protracted litigation,  difficulties in proving damages, the necessity of expensive expert analyses and testimony, the prospect of appeals of certain decisions, and the delay of continued litigation.

The amount of Two Dollars ($2.00) per Qualifying Purchase and maximum of Twenty Dollars ($20.00) per household, is fair and adequate, providing substantial relief to the proposed Class Members. (Wolfson Decl. ¶¶ 15-16.) Similarly, these amounts generally will exceed the other likely measure of damages - the difference between the purchase price for the product as represented and the value of the product received, if the product received is compared to regular

snacks that are not labeled "All Natural." (Wolfson Decl. ¶ 16.)

## VI.     THE PROPOSED FORM AND METHOD OF NOTICE IS THE BEST NOTICE PRACTICABLE AND SHOULD BE APPROVED

The threshold requirement concerning the sufficiency of class notice is whether the means employed to distribute the notice is "reasonably calculated" to notify the class of the pendency of the action, of the proposed settlement, and of the class members' rights to opt out or object. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173-74 (1974); *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 315 (1950); *Greenspun v. Bogan*, 492 F.2d 375, 382 (1st Cir. 1974). In other words, the notice must be the "best notice practicable under the circumstances." *Eisen*, 417 U.S. at 173.

Because Defendant does not sell the Eligible Products directly to most proposed Class Members, Defendant does not have mailing addresses or other contact information for the overwhelming majority of the Class. Thus, direct notice to proposed Class Members would be impracticable, if not impossible. *See* Fed. R. Civ. P. 23(c)(2) (requiring individual notice to class members who can be identified through reasonable effort). Steve Weisbrot, Esq., an expert on class action notice with the Parties' proposed Settlement Administrator, Angeion, designed a Notice program that maximizes exposure to proposed Class Members through various means of Internet publication. Angeion has provided notice for and administered over 2,000 class action settlements. Angeion has distributed over ten billion dollars to class members. (Weisbrot Decl. ¶ 5.) The Summary Settlement Notice will be published online on the Settlement Website. Additionally, Class Notice and Claim Forms will be available through the Settlement Website (www.UtzSettlement.com) maintained by the Class Action Settlement Administrator. The Class Notice and Claim Forms will also be provided to proposed Class Members who request by

writing to the Settlement Administrator or calling the toll-free number established for this
Settlement.

The proposed Notice – collectively the long form Class Notice and the Summary
Settlement Notice – satisfies the requirements of Rule 23(c)(2)(B)(i)-(vii). (*See* Stip. Exs. 2
(Class Notice) and 6 (Summary Settlement Notice).) The Notice is written in simple,
straightforward language and includes: (1) basic information about the lawsuit; (2) a description
of the benefits provided by the Settlement; (3) an explanation of how proposed Class Members
can obtain Settlement benefits; (4) an explanation of how proposed Class Members can exercise
their right to opt out or object to the Settlement; (5) an explanation that any claims against
Defendant that could have been litigated in this Action, except for claims of personal injury, will
be released if the proposed Class Member does not opt out of the Settlement; (6) the names of
Class Counsel and information regarding Attorneys' Fees and Expenses, as well Plaintiffs'
Service Awards; (7) the Fairness Hearing date; (8) an explanation of eligibility for appearing at
the Fairness Hearing; and (9) the Settlement Website and a toll free number where additional
information can be obtained. (*Id.*) The Notice also informs proposed Class Members that
Plaintiffs' final approval papers and request for Attorneys' Fees and Expenses and Service
Awards will be filed prior to the objection deadline. Collectively, the Notice provides proposed
Class Members with sufficient information to make an informed and intelligent decision about
the Settlement. As such, it satisfies the content requirements of Rule 23.

In sum, the content and dissemination of the proposed Notice constitute the best notice
practicable under the circumstances and fully comply with the requirements of Rule 23.

## VII.    CONCLUSION

The proposed Settlement is fair, presents no obvious deficiencies, and falls within the range of possible approval. Plaintiffs respectfully request that the Court grant preliminary approval of the proposed Settlement, certify the Class for settlement purposes, approve the proposed Notice program, enter an order substantially in the form accompanying the [Proposed] Preliminary Approval Order accompanying the Settlement Agreement, and set a date for the Fairness Hearing.

Dated: February 17, 2017                         **AHDOOT & WOLFSON, PC**

                                         By:      /s/ *Tina Wolfson*
                                                  Tina Wolfson (*pro hac vice*)
                                                  *twolfson@ahdootwolfson.com*
                                                  Robert Ahdoot (*pro hac vice*)
                                                  *rahdoot@ahdootwolfson.com*
                                                  1016 Palm Avenue
                                                  West Hollywood, CA 90069
                                                  Phone: (310) 474-9111
                                                  Fax: (310) 474-8585

                                                  **MIRABELLA LAW**
                                                  Erica C. Mirabella (MA Bar No. 676750)
                                                  *erica@mirabellaLLC.com*
                                                  132 Boylston Street, 5th Floor
                                                  Boston, MA 02116
                                                  Phone: (617) 580-8270
                                                  Fax: (617) 583-1905

                                                  **BARBAT MANSOUR & SUCIU PLLC**
                                                  Nick Suciu III (*pro hac vice*)
                                                  *nicksuciu@bmslawyers.com*
                                                  434 West Alexandrine #101
                                                  Detroit, MI 48201
                                                  Phone: (313) 303-3471

                                                  *Counsel for Plaintiffs and*
                                                  *Proposed Settlement Class Counsel*

**CERTIFICATE OF SERVICE**

I hereby certify I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the Electronic Mail Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on February 17, 2017.

/s/ *Tina Wolfson*
Tina Wolfson