## UNITED STATES DISTRICT COURT

## DISTRICT OF MASSACHUSETTS

_____
                                                    )
MATT DIFRANCESCO, ANGELA           )
MIZZONI, and LYNN MARRAPODI,       )
individually and on Behalf of              )
All Others Similarly Situated,               )
                                                    )
                    Plaintiffs,                      )          **C.A. NO.:  1:14-CV-14744-DPW**
                                                    )
v.                                                   )
                                                    )
UTZ QUALITY FOODS, INC.                )
                                                    )
                    Defendant.                     )
_____)

## <u>AMENDED SETTLEMENT AGREEMENT</u>

**TABLE OF CONTENTS**

Page

I.      INTRODUCTION...........................................................................................................1

II.     DEFINITIONS.............................................................................................................4

III.    CERTIFICATION OF THE SETTLEMENT CLASS....................................................11

IV.     SETTLEMENT CONSIDERATION.............................................................................12

V.      NOTICE TO THE CLASS............................................................................................18

VI.     REQUESTS FOR EXCLUSION...................................................................................25

VII.    OBJECTIONS TO SETTLEMENT AND APPEARANCE
        AT FAIRNESS HEARING ..........................................................................................26

VIII.   RELEASE AND WAIVER...........................................................................................27

IX.     ATTORNEYS' FEES AND EXPENSES AND INDIVIDUAL
        PLAINTIFF AWARDS.................................................................................................28

X.      NOTICE APPROVAL ORDER, FINAL ORDER, FINAL JUDGMENT AND
        RELATED ORDERS....................................................................................................30

XI.     MODIFICATION OR TERMINATION OF THIS AGREEMENT..............................31

XII.    GENERAL MATTERS AND RESERVATIONS..........................................................34

## <u>TABLE OF EXHIBITS</u>

<u>**Document**</u>                                                          <u>**Exhibit Number**</u>

Claim Form ................................................................................................................. 1

Class Notice ............................................................................................................... 2

[Proposed] Final Order .............................................................................................. 3

[Proposed] Final Judgment ........................................................................................ 4

[Proposed] Notice Approval Order ............................................................................ 5

Summary Settlement Notice ....................................................................................... 6

Settlement Claim Procedures and Claim Calculation Protocol ............................... 7

Settlement Administrator Declaration ....................................................................... 8

**IT IS HEREBY STIPULATED AND AGREED**, by, between, and among Plaintiffs Matt DiFrancesco, Angela Mizzoni, and Lynn Marrapodi ("Plaintiffs") and Defendant Utz Quality Foods, LLC, a Delaware limited liability company f/k/a Utz Quality Foods, Inc. ("Defendant" or "Utz"), with all terms as defined below, through their duly-authorized counsel, that the above-captioned action, *DiFrancesco, et al. v. Utz Quality Foods, Inc.*, No. 1:14-CV-14744-DPW (D. Mass.), and the matters raised therein, are settled and judgment shall be entered on the terms and conditions set forth in this Amended Settlement Agreement ("Settlement" or "Agreement") and the Release set forth herein, subject to the approval of the Court.

## I.   INTRODUCTION

A.      Plaintiffs' national class action complaint (including the subsequent amendment thereto) in the instant case, entitled *DiFrancesco, et al. v. Utz Quality Foods, Inc.*, No. 1:14-CV-14744-DPW (D. Mass.), and initially filed on December 30, 2014, in the United States District Court for the District of Massachusetts (the "Action"), alleges, *inter alia*, that Utz manufactured, marketed, and sold various snack foods. The Action alleges that through a nationwide advertising campaign, Utz sold its products by advertising that they were "All Natural." Plaintiffs challenged these advertisements, asserting, *inter alia*, that Defendant's products are not "All Natural" in that they contain ingredients that are chemically derived, heavily processed, synthetic, and/or artificial, and/or made from ingredients containing and/or derived from Genetically Modified Organisms ("GMO"). Plaintiffs alleged that Utz breached the express warranty created by the "All Natural" claim, that Utz was unjustly enriched, and that Utz violated Mass. Gen. Law ch. 93A and ch. 266, § 91 and New York Gen. Bus. Law ("GBL") §§ 349 and 350.

B.      Plaintiffs, as Settlement Class representatives, believe that the claims settled herein have merit. However, Plaintiffs and Class Counsel recognize and acknowledge the expense and length of continued proceedings necessary to prosecute the claims through trial, appeal, and ancillary actions. They have also taken into account the uncertain outcome and the risk of any litigation, as well as the difficulties and delay inherent in such litigation. They believe that the settlement set forth in this Agreement confers substantial benefits upon the Class Members. Based upon their evaluation, they

have determined that the settlement set forth in this Agreement is fair, reasonable and adequate and in the best interest of the Settlement Class.

      C.      Defendant has denied and continues to deny all liability with respect to any and all of the claims alleged in the Action or the facts alleged in support thereof and has denied and continues to deny all charges of wrongdoing or liability against it arising out of or relating to any conduct, acts, or omissions alleged in the Action. Defendant's willingness to resolve the Action on the terms and conditions embodied in this Agreement is based on, *inter alia*: (i) the time and expense associated with litigating this Action through trial and any appeals; (ii) the benefits of resolving the Action, including limiting further expense, inconvenience, and distraction, disposing of burdensome litigation, and permitting Defendant to conduct its business unhampered by the distractions of continued litigation; and (iii) the uncertainty and risk inherent in any litigation.

      D.      Before entering into this Agreement, Class Counsel conducted an extensive and thorough examination, investigation, and evaluation of the relevant law, facts and allegations to assess the merits of the claims and potential claims to determine the strength of both defenses and liability sought in the Action.

      E.      Through negotiation, the Parties reached an agreement as to a schedule for discovery. On July 10, 2015, Plaintiffs served on Utz a total of 117 requests for production and thirty (30) interrogatories.  On August 28, 2015, Plaintiffs served on Utz a total of fifty-four (54) requests for admission.  This resulted in the production by Utz of written responses and over 2,200 pages of documents in electronic form, which were thoroughly reviewed by Plaintiffs' Counsel.  On July 15, 2015, Utz served a total of thirty-six (36) interrogatories, sixty-nine (69) requests for production and twenty-seven (27) requests for admission.  Plaintiffs served written responses and produced a total of 879 pages of documents.

      F.      This Agreement follows and supersedes the original Settlement Agreement (Dkt. No. 75), the Amendment thereto (Dkt. No. 85), and is the product of extensive, arms-length, and vigorously-contested settlement discussions.  After numerous settlement discussions between counsel, the Parties engaged in a mediation session with the Honorable Peter Lichtman (Ret.) of JAMS,

continued negotiations thereafter, and reached a settlement in principle.  Before and during settlement discussions, the Parties had an arms-length exchange of sufficient information to permit Plaintiffs and Class Counsel to evaluate the claims and potential defenses and to meaningfully conduct informed settlement discussions.  In connection with the Parties' mediation, Plaintiffs obtained discovery regarding: (i) product packaging throughout the Class Period; (ii) the use of the phrases "Natural" and "All Natural" on product labels; and (iii) financial information, including the total amount of wholesale revenue, by product type, throughout the class period, and retail sales data.  Plaintiffs also produced to Utz additional information regarding Plaintiffs' purchases.

G.      Based upon their review, investigation, and evaluation of the facts and law relating to the matters alleged in the pleadings, Plaintiffs and Class Counsel, on behalf of Plaintiffs and the other members of the proposed Class, have agreed to settle the Action pursuant to the provisions of this Agreement, after considering, among other things:  (1) the substantial benefits to the Class Members under the terms of this Agreement;  (2) the risks, costs, and uncertainty of protracted litigation, especially in complex actions such as this, as well as the difficulties and delays inherent in such litigation; and  (3) the desirability of consummating this Agreement promptly in order to provide effective relief to the Class Members.

H.      Utz has vigorously denied and continues to dispute all of the claims and contentions alleged in the Action.  Utz expressly denies any and all wrongdoing alleged in the pleadings and does not admit or concede any actual or potential fault, wrongdoing, liability, or damage of any kind to Plaintiffs and the Settlement Class or in connection with any facts or claims that have been or could have been alleged against it in the Action.  Utz further denies that it acted improperly or wrongfully in any way, and believes that the Action has no merit.  Even though Utz expressly denies any wrongdoing, Utz considers it desirable for the Action to be settled and dismissed, because this Settlement will finally put the Action and the underlying claims and matters to rest and will avoid the substantial expense, burden, and uncertainty associated with the continued litigation of these claims.

I.      Utz has agreed to class action treatment of the claims alleged in the Action solely for the purpose of compromising and settling those claims on a class basis as set forth herein.

3

J.      This Agreement, any negotiations, proceedings, or documents related to this Agreement, its implementation, or its judicial approval (as well as the fact of this Agreement and any acts or documents related to this Agreement or its implementation) cannot be asserted or used by any person to support a contention that class certification is proper or improper or that liability does or does not exist, or for any other reason, in the above-captioned Action or in any other proceedings; provided, however, that Class Members, Class Counsel, Defendant, other related persons, and any person who is a beneficiary of a Released Party set forth herein, may reference and file this Agreement, and any resulting Order or Judgment, with the Court, or any other tribunal or proceeding, in connection with the implementation or enforcement of its terms (including but not limited to the Releases granted therein, or any dispute related thereto).  Neither this Agreement, nor any court order approving this Agreement, shall be construed as a criticism or an endorsement of the Eligible Products.

NOW THEREFORE, it is hereby STIPULATED AND AGREED, by and between the Parties, through their respective counsel, that: (a) the Action be fully and finally compromised, settled and released upon final settlement approval by the Court after the hearings as provided for in this Agreement; and (b) upon such approval by the Court, a Final Order and Final Judgment, substantially in the form attached hereto as Exhibits "3" and "4," respectively, be entered dismissing the Action with prejudice upon the following terms and conditions of this Agreement.

## II.     **DEFINITIONS**

A.      As used in this Agreement and the attached exhibits (which are an integral part of this Agreement and are incorporated in their entirety by reference), the following terms have the following meanings, unless this Agreement specifically provides otherwise:

1.      "Action" means the lawsuit entitled *DiFrancesco, et al.  v. Utz Quality Foods, Inc.*, No. 1:14-CV-14744-DPW (D. Mass.).

2.      "Agreement" or "Settlement" means this Amended Settlement Agreement and its exhibits, attached hereto or incorporated herein, including any subsequent amendments agreed to by the Parties and any exhibits to such amendments.

4

3.      "Attorneys' Fees and Expenses" means such funds as may be awarded by the Court to Class Counsel from Defendant to compensate Plaintiffs' Counsel for their fees and expenses in connection with the Action and the Settlement, as described in Section IX of this Agreement.

4.      "Claim" means the claim of a Class Member or his or her representative submitted on a Claim Form as provided in this Agreement.

5.      "Claimant" means a Class Member who has submitted a Claim.

6.      "Claim Form" means the document in substantially the same form attached as Exhibit 1 to this Agreement.

7.      "Claim Period" means the time period in which Class Members may submit a Claim Form for review to the Settlement Administrator.  The Claim Period shall run for one hundred twenty (120) calendar days from the date of the first dissemination of the Summary Settlement Notice or Class Notice, whichever is earlier.

8.      "Claim Process" means that process for submitting Claims described in this Agreement.

9.      "Class" or "Settlement Class" means all persons who, during the Class Period, purchased in the United States any of the Eligible Products.  Excluded from the Class are: (a) Utz's board members or executive-level officers; (b) persons who purchased the Eligible Products primarily for the purpose of resale, including, but not limited to, retailers or re-sellers of the Eligible Products; (c) governmental entities; (d) persons who timely and properly exclude themselves from the Class as provided in this Agreement; and (e) the Court, the Court's immediate family, and Court staff.

10.      "Class Member" means a member of the Class.

11.      "Class Counsel" means:  Robert Ahdoot and Tina Wolfson on behalf of Ahdoot & Wolfson, PC.

12.      "Class Notice" or "Notice" means a notice substantially in the form attached as Exhibit 2 to this Agreement.

13.      "Class Period" means the period from December 30, 2010, up to and including the date of the first dissemination of the Summary Settlement Notice or Class Notice, whichever is

earlier.

14.     "Court" means the United States District Court for the District of Massachusetts.

15.     "Defendant" means Utz Quality Foods, LLC f/k/a Utz Quality Foods, Inc.

16.     "Eligible Product(s)" means any and all products of any size, style, flavor, and variety containing the Utz or Bachman brand which are or were labeled with the word "Natural," or phrases "All Natural," "non-GMO," or "not synthetic," or any other words or phrases to convey the same or similar meanings, including all sizes, styles, flavors, and varieties of the following:

      a.     **Utz Snacks**:

            i.     UTZ BRANDED POTATO CHIPS;

            ii.     UTZ BRANDED BAKED POTATO CHIPS;

            iii.     UTZ BRANDED PRETZELS;

            iv.     UTZ BRANDED POPCORN;

            v.     UTZ BRANDED TORTILLAS AND UTZ BRANDED SNACK MIXES;

            vi.     UTZ BRANDED SALSAS AND UTZ DIPS;

            vii.     UTZ BRANDED CHEESE AND EXTRUDED SNACKS; and,

            viii.     UTZ BRANDED PORK RINDS.

      b.     **Bachman Snacks**:

            i.     BACHMAN BRANDED PRETZELS;

            ii.     BACHMAN BRANDED POTATO CHIPS;

            iii.     BACHMAN BRANDED TORTILLA CHIPS AND CORN CHIPS;

            iv.     BACHMAN BRANDED CHEESE SNACKS;

            v.     BACHMAN BRANDED POPCORN; and,

            vi.     BACHMAN BRANDED SALSA.

17.     "Fairness Hearing" means the hearing at or after which the Court shall make a final decision whether to approve this Agreement as fair, reasonable, and adequate. The Parties shall

request that the Court schedule the Fairness Hearing for a date that is in compliance with the provisions of 28 U.S.C. § 1715(d), but no later than one hundred eighty-five (185) calendar days, after entry of the Notice Approval Order.

18.     "Final Order and Final Judgment" means the Court's order approving the Settlement and this Agreement, as described in Section X of this Agreement, which is to be substantially in the forms attached as Exhibits 3 and 4, respectively, to this Agreement.

19.     "Final Settlement Date" means the date on which the Final Order and Final Judgment approving this Agreement become final.  For purposes of this Agreement:

a.     if no appeal has been taken from the Final Order and Final Judgment, "Final Settlement Date" means the date on which the time to appeal therefrom has expired; or

b.     if any appeal has been taken from the Final Order and Final Judgment, "Final Settlement Date" means the date on which all appeals therefrom, including petitions for rehearing or re-argument, petitions for rehearing en banc and petitions for certiorari or any other form of review, have been finally disposed of in a manner that affirms the Final Order and Final Judgment; or

c.     if Class Counsel and Defendant's Counsel agree in writing, "Final Settlement Date" can occur on any other agreed date.

20.     "Historical Documents" means any and all materials in any and all forms (written, electronic, or otherwise) created or existing prior to Final Settlement Date that describe or depict the Eligible Products, whether or not such documents are in the possession, custody or control of Utz.

21.     "Notice Approval Order" means the order to be entered by the Court Authorizing Notice of Class Settlement and Notice of Final Fairness Hearing, as outlined in Section X of this Agreement and which is to be substantially in the form attached as Exhibit 5 to this Agreement.

22.     "Parties" means Plaintiffs and Defendant, collectively, as each of those terms is defined in this Agreement.

23.     "Plaintiffs" means Matt DiFrancesco, Angela Mizzoni, and Lynn Marrapodi.

24.    "Plaintiffs' Counsel" means Class Counsel. "Qualifying Purchase" means the purchase of an Eligible Product by a Class Member during the Class Period.

25.    "Release" means the release and waiver set forth in Section VIII of this Agreement and in the Final Order and Final Judgment.

26.    "Released Claims" means any and all manner of individual, class, representative, group and collective claims, actions, causes of action, suits, liabilities, rights, debts, sums of money, payments, obligations, reckonings, contracts, agreements, executions, promises, damages, losses, liens, judgments, matters and demands of whatever kind, type, description or nature whatsoever, both at law and in equity, whether past, present or future, mature or not yet mature, known or unknown, suspected or unsuspected, contingent or non-contingent, whether based on federal, state, or local law, statute, ordinance, regulation, code, contract, common law, or any other source, or any claim that Plaintiffs or Class Members ever had, how have, or hereafter can, shall or may ever have against the Released Parties in any court, tribunal, arbitration panel, commission, agency, or before any governmental and/or administrative body, or any other adjudicatory body, on the basis of, connected with, arising from, or in any way whatsoever relating to the purchase of the Eligible Products during the Class Period and the claims alleged in the complaint and amended complaints filed in the Action, and, more particularly, but without in any way limiting the generality of the foregoing, arising from, directly or indirectly, or in any way whatsoever pertaining or relating to the claims alleged in the complaints and amended complaints filed in the Action, including but not limited to, communications, disclosures, nondisclosures, representations, statements, claims, omissions, messages, design, testing, marketing, advertising, promotion, packaging, labeling, displays, brochures, studies, manufacture, distribution, operation, performance, functionality, notification, providing, offering, dissemination, replacement, sale and/or resale by the Released Parties of the Eligible Products during the Class Period; any claims for recission, restitution or unjust enrichment for all damages of any kind relating to the purchase of the Eligible Products during the Class Period and the claims alleged in the complaint and amended complaints filed in the Action; violations of any state's deceptive, unlawful and/or unfair business and/or trade practices, false, misleading or

fraudulent advertising, consumer fraud and/or consumer protection statutes relating to the purchase of the Eligible Products during the Class Period and the claims alleged in the complaint and amended complaints filed in the Action; any claims of fraud, negligence, product liability, conspiracy; any violations of the Uniform Commercial Code, any violation of the Magnuson-Moss Warranty Act, any breaches of express, implied and/or any other warranties, any similar federal, state or local statutes, codes, damages, costs, expenses, extra-contractual damages, compensatory damages, exemplary damages, special damages, penalties, punitive damages and/or damage multipliers, disgorgement, declaratory relief, expenses, interest, and/or attorney's fees and costs against the Released Parties pertaining to or relating to the claims alleged in the complaint and amended complaints filed in the Action relating to the purchase of the Eligible Products during the Class Period and the claims alleged in the complaints and amended complaints filed in the Action, notwithstanding the Plaintiffs' and Class Members' knowledge that they may hereafter discovery facts in addition to or different from those they now know or believe to be true concerning the subject matter of the Action and/or Release herein.

27.   Notwithstanding any other provision of this Agreement, "Released Claims" do not include claims for personal injuries. Plaintiffs and other Class Members are not releasing (i) any claims, demands, rights, damages, obligations, suits, debts, liens, and causes of action relating to personal injuries; and (ii) any of Defendant's obligations pursuant to the terms and conditions of this Agreement.

28.   "Released Party" and "Released Parties" means Utz, Rice Investments, LP ("Rice"), and Savor Street Foods, Inc. f/k/a The Bachman Company ("Savor Street"), any person or entity that manufactured, tested, inspected, audited, certified, purchased for re-sale, distributed, licensed, transported, marketed, advertised, donated, promoted, sold, re-sold, or offered for sale at wholesale or retail any Eligible Products, or contributed to any labeling, advertising, packaging, ingredient, or component thereof, including all of Utz's, Rice's, and Savor Street's respective past and present officers, directors, managers, employees, stockholders, owners, agents, assigns, attorneys, insurers, administrators, successors, subsidiaries, suppliers, distributors, assigns, affiliates, joint-ventures,

9

parents, partners, members, divisions, predecessors, and authorized retailers, resellers, manufacturers, co-manufacturers, co-packers, advertisers, and wholesalers of the Eligible Products.  It is expressly agreed that, to the extent a Released Party (including Rice and Savor Street) is not a Party to this Agreement, all such Released Parties are intended third-party beneficiaries of this Agreement and receive the same benefits from the Settlement as Utz.

29.     "Releasing Party" and "Releasing Parties" means each of the Plaintiffs and the other Class Members and any person or entity claiming by or through any Class Member, including but not limited to, spouses, children, guardians, heirs, devisees, legatees, invitees, employees, associates, attorneys, agents, executors, administrators, predecessors, successors, assignees, or representatives of any kind.

30.     "Settlement" means the settlement embodied in this Agreement, including all attached Exhibits (which are an integral part of this Agreement and are incorporated in their entirety by reference).

31.     "Settlement Administrator" means the third-party agent or administrator agreed to by the Parties and appointed by the Court.  The Parties agree that Angeion Group shall be retained to design, consult on, and implement the Class Notice and related requirements of this Agreement, including the settlement website, Claim review and related requirements of this Agreement, subject to the Court's approval.

32.     "Settlement Claim Procedures and Claim Calculation Protocol" means the protocol attached hereto as Exhibit 7.

33.     "Settlement Fund" means the One Million Two Hundred and Fifty Thousand Dollars and No Cents ($1,250,000.00) that Utz will pay or cause to be paid, pursuant to the terms of Section IV.A of this Agreement.

34.     "Settlement Fund Balance" means the balance remaining in the Settlement Fund after payment of (i) all costs of notice and administration (including the Periodic Payments as defined in Section IV.A.1.a herein and the other amounts referred to in Section IV.A.2.(a) and (b), (ii) the Service Award (as defined in Section IX.A herein) to the Plaintiffs, and (iii) the Attorneys' Fees and

Expenses.

35.     "Summary Settlement Notice" means the Summary Class Notice to be disseminated by Internet publication substantially in the form of Exhibit 6 attached to this Agreement.

36.     "Synthetic Ingredient": The Parties agree, for the purpose of this Settlement only, that Synthetic Ingredients shall mean and include an ingredient that is formulated or manufactured by a chemical (or biochemical) process or by a process that chemically changes a substance extracted from naturally occurring plant, animal, or mineral sources, including but not limited to the following allegedly synthetic ingredients identified in Plaintiffs' Second Amended Complaint: Beta Carotene, Canola Oil, Caramel Color, Citric Acid, Corn Flour, Corn Oil, Corn Syrup, Cottonseed Oil, Dextrose, Distilled Vinegar, Malic Acid, Maltodextrin, Modified Food Starch, Oleoresin Paprika Extract, Paprika Extract, Potassium Chloride, Safflower Oil, Soy Lecithin, Soybean Oil, Sunflower Oil, Toasted Corn Germ, White Corn, Whole Grain, and Yellow Corn.  It is expressly understood and agreed that Utz agrees to the foregoing definition of Synthetic Ingredients solely for the purpose of effectuating the terms of this Agreement and for no other purpose.

37.     "Utz" means Utz Quality Foods, LLC f/k/a Utz Quality Foods, Inc.

38.     "Utz's Counsel" or "Defendant's Counsel" means Campbell Campbell Edwards & Conroy, P.C. and Cozen O'Connor.

B.     Other capitalized terms used in this Agreement but not defined in this Section II shall have the meanings ascribed to them elsewhere in this Agreement.

C.     The terms "he or she" and "his or her" include "it" or "its" where applicable.

## III.     CERTIFICATION OF THE SETTLEMENT CLASS

Utz, while continuing to deny that the Action meets the requisites for class certification under Fed. R. Civ. P. 23 for any purpose other than settlement, consents, solely for purposes and in consideration of the Settlement, to the certification of the Settlement Class, to the appointment of Class Counsel, and to the conditional approval of Plaintiffs as a suitable representatives of the Class. The certification of the Settlement Class, the appointment of Plaintiffs as the Class representatives, and the appointment of Plaintiffs' Counsel to act as Class Counsel, shall be binding only with respect

to this Agreement and the Settlement.  If the Court fails to approve this Agreement and the Settlement for any reason, or if this Agreement and the Settlement is terminated, cancelled, or fails to become effective for any reason whatsoever, this class certification, to which the Parties have stipulated solely for the purposes and in consideration of the Settlement of this Action, this Agreement, and all the provisions of the Notice Approval Order, shall be vacated by their own terms, and the litigation of the Action shall revert to its status with respect to class certification and otherwise as it existed prior to the date of this Agreement.  In that event, Utz shall retain all rights it had immediately preceding the execution of this Agreement to object to the maintenance of the Action as a class action and to the merits of any of Plaintiffs' claims, and in that event, nothing in this Agreement or other papers or proceedings related to the Settlement shall be used as evidence or argument by any party concerning whether the Action may properly be maintained as a class action under applicable law, whether any of Plaintiffs' claims or Utz's defenses have any merit, whether Utz is liable to Plaintiffs and the putative Class, and whether Plaintiffs and the putative Class suffered damages.

## IV.   <u>SETTLEMENT CONSIDERATION</u>

Settlement relief shall consist of two components: (1) refunds to Class Members who submit valid Claims; and (2) Utz's ceasing to use the terms "Natural" and "All Natural" on its labeling and advertising of Eligible Products no later than four (4) months of the Final Settlement Date in accordance with the terms of this Agreement.

A.   <u>Settlement Fund</u>:

1.   Utz agrees to pay or cause to be paid the aggregate sum of One Million Two Hundred and Fifty Thousand Dollars and No Cents ($1,250,000.00) as follows:

a.   <u>Periodic Payment(s)</u>:  Within ten (10) calendar days after Utz's receipt of any reasonable invoice submitted by the Settlement Administrator for amounts referred to in Section IV.A.2.(a) and (b), and approved by Class Counsel and Defendant's Counsel, the sum of said approved invoice to the Settlement Administrator ("Periodic Payment(s)").

b.    <u>Settlement Fund Balance Payment</u>:  Within ten (10) calendar days after the Final Settlement Date, Defendant shall pay or cause to be paid to the Settlement Administrator an amount equal to the Settlement Fund Balance to be used for the payment of Claims of Class Members.

c.    <u>Attorneys' Fees and Expenses</u>: Funding for the payment of the Attorneys' Fees and Expenses  shall be made in accordance with Section IX of this Agreement or as otherwise ordered by the Court. The applicable payment deadline may be extended by mutual consent of the Parties.

d.    <u>Service Award Payment</u>: Funding for the payment of the Service Award (as this term is defined in Section IX.A) shall be made in accordance with Section IX of this Agreement or as otherwise ordered by the Court.  The applicable payment deadline may be extended by mutual consent of the Parties.

2.    Settlement Fund proceeds shall be used for the payment of: (a) the costs and expenses that are associated with disseminating the Notice to the Class, including, but not limited to, the Class Notice and the Summary Settlement Notice; (b) the costs and expenses associated with the administration of the Settlement (including any costs charged or incurred by the Settlement Administrator in satisfying Utz's obligation pursuant to 28 U.S.C. § 1715(a) and 28 U.S.C. § 1715(b)); (c) timely, valid, and approved Claims submitted by Class Members pursuant to the Claim Process; (d) the Residual Funds, if any, pursuant to Section IV.E.3 of this Agreement; (e) payment of the Attorneys Fees and Expenses; and (f) payment of the Service Awards to the Plaintiffs.  Class Counsel must approve any payment of costs or expenses under subsections (a) and (b) of this paragraph, which approval shall not be unreasonably withheld.  Approval and payment of Claims under subsections (a) and (b) of this paragraph shall be in accordance with the terms and conditions of this Agreement and the Settlement Claim Procedures and Claim Calculation Protocol.  Payment of Attorneys' Fees and Expenses under subsection (e) of this paragraph and the Service Award under subsection (f) of this paragraph shall be in accordance with Section IX of this Agreement and subject to Court approval.

3.    Utz shall not be liable for payment of any costs, expenses, Claims authorized or any other liabilities under this Agreement beyond its payment of the full amount of the Settlement

Fund as provided in this Agreement. The Parties agree that Utz's payment of One Million Two Hundred and Fifty Thousand Dollars and No Cents ($1,250,000.00) into the Settlement Fund is the full extent of Utz's monetary payment obligation under this Agreement.  This payment obligation pursuant to the terms and conditions of this Agreement, and any other obligations of Utz set forth in this Agreement, will be in full satisfaction of all individual and Class claims asserted in the Action.

B.      Notice Pursuant to 28 U.S.C. Section 1715:  No later than ten (10) calendar days after this Agreement is filed with the Court, Utz, through the Settlement Administrator, shall cause to be mailed the items specified in 28 U.S.C. § 1715(b) to each State and Federal official, as specified in 28 U.S.C. § 1715(a).

C.      Claim Form Submission, Review, and Administration of the Settlement:

1.      Class Members may submit a Claim through the Claim Process during the Claim Period and the Settlement Administrator shall review and process the Claims pursuant to this Agreement and the Settlement Claim Procedures and Claim Calculation Protocol, which is attached as Exhibit 7 to this Agreement.  As part of the Claim Process, Class Members shall be eligible for the relief provided in this Agreement, provided Class Members fully complete and timely submit the Claim Form to the Settlement Administrator within the Claim Period, except as otherwise provided in this Agreement and the Settlement Claim Procedures and Claim Calculation Protocol.

2.      As further specified in the Settlement Claim Procedures and Claim Calculation Protocol, the Claim Form shall advise Class Members that the Settlement Administrator has the right to request verification of the purchase of Eligible Products, including, but not limited to, documentation demonstrating purchase of any and all of the Eligible Products during the Class Period. If the Class Member does not timely comply and/or is unable to timely produce documents to substantiate and/or verify the information on the Claim Form or the Claim is otherwise not approved, the Claim shall be disqualified.

3.      Each Class Member shall submit a Claim Form stating that he or she purchased one or more of the Eligible Products.  The Claim Form shall be signed under an affirmation, substantially in the following language: "I declare or affirm, under penalty of perjury, that the

14

information in this claim form is true and correct to the best of my knowledge and that I purchased the amount of Eligible Product(s) claimed above during the Class Period. I understand that my claim form may be subject to audit, verification, and Court review." Claim Forms will be: (a) included on the Settlement website to be designed and administered by the Settlement Administrator; and (b) made readily available from the Settlement Administrator, as provided in the Notice Approval Order.

4.      The Settlement Administrator shall provide periodic updates to Class Counsel and to Defendant's Counsel regarding Claim Form submissions beginning within seven (7) business days after the commencement of the dissemination of the Class Notice or the Summary Settlement Notice and continuing on a monthly basis thereafter.

5.      The Settlement Administrator shall begin to pay timely, valid, and approved Claims commencing no later than one hundred and twenty (120) calendar days after the close of the Claim Period so long as this period is after the Final Settlement Date, or sooner upon Utz's and Plaintiffs' Counsel's joint direction, but not before the issuance of the Court's Final Order and Final Judgment approving the Settlement. In the event the Final Settlement Date falls after the close of the Claim Period, then the Settlement Administrator shall begin to pay timely, valid, and approved Claims commencing no later than one hundred and twenty (120) calendar days after the Final Settlement Date. The Settlement Administrator shall have completed the payment to Class Members who have submitted timely, valid and approved Claims pursuant to the Claim Process no later than one hundred sixty (160) calendar days after either the Final Settlement Date or the close of the Claim Period, whichever is later.

D.      Relief Available to Class Members:

1.      Eligible Class Members who made a Qualifying Purchase and submit a Claim Form pursuant to the terms and conditions of this Agreement are entitled to a payment of Two Dollars and No Cents ($2.00) per Qualifying Purchase up to a maximum of Twenty Dollars and No Cents ($20.00) (the "Initial Claim Amount") per household, subject to the adjustments set forth in Section IV.E.

E.      Adjustments and Remaining Funds:

1.      If the total of the timely, valid and approved Claims submitted by Class

Members exceeds the Settlement Fund Balance, each eligible Class Member's Initial Claim Amount shall be reduced on a *pro rata* basis, such that the aggregate value of the cash payments pursuant to valid Claims does not exceed the Settlement Fund Balance.  The Settlement Administrator shall determine each eligible Class Member's *pro rata* share based upon each Class Member's Claim Form and the total number of valid Claims.  Accordingly, the actual amount recovered by each Class Member will not be determined until after the Claim Period has ended and all Claims Forms have been received, and may not be determined until after the Final Settlement Date.

       2.     In no event shall an individual Class Member's recovery amount exceed the individual recovery amounts specified in Section IV.D.

       3.     If there are any funds remaining in the Settlement Fund Balance after the Claim program has been completed ("Residual Funds"), including, but not limited to, any funds remaining in the Settlement Fund Balance after all Claims have been paid or un-cashed distributions made payable to eligible Class Members, the Settlement Administrator shall equally distribute the Residual Funds to the following non-profit organization: Consumers Union (www.consumersunion.org).  To the extent that a check issued to a Class Member is not cashed within ninety (90) days after the date of issuance, the check will be void, and any resulting unclaimed funds shall be part of the Residual Funds. The Residual Funds will not be returned to Defendant.  Defendant represents and warrants that any payment of Residual Funds that may be made to the the non-profit organizations referenced above shall not reduce its donations or contributions to any charity or non-profit organization, if any, that it would have made irrespective of the terms of this Agreement.  To be eligible to receive funds from the Residual Funds, Consumers Union must declare that it will not use the Residual Funds it receives (if any) for litigation or lobbying purposes.

       F.     <u>Agreement to Change Product Labeling</u>:

16

1.      In addition to the relief discussed above, as part of this Agreement, within four (4) months after the Final Settlement Date, Utz shall cease to use the term "Natural" and "All Natural" on its labeling and advertising of Eligible Products.  For the purposes of this Agreement, sales of Eligible Products already in inventory or sales of Eligible Products with film printed prior to the Final Settlement Date shall not constitute a violation of this Agreement.  Utz shall not be obligated to remove or modify Historical Documents in its internal records or on any social media pages or its website, including but not limited to, any previous posts, comments, press releases, or third party media.  Further, Utz shall not be obligated to change any Historical Documents, written, electronic, or otherwise, not within its possession or control.  Nothing in this Agreement shall be construed as preventing Utz from advertising and/or labeling its products that do not contain GMO, Synthetic Ingredients, artificial ingredients, and artificial flavors as "Natural" or "All Natural."  Nothing contained in this Agreement shall prohibit Utz from disclosing that any given product contains GMO ingredients either on a product label or otherwise, or require Utz to disclose that a product contains GMO on product labels or advertisements.

2.      Nothing in this Agreement shall prevent Utz from implementing the changes referenced in this paragraph prior to the Final Settlement Date..

3.      Nothing in this Agreement shall prevent Utz from making "natural flavor" claims in accordance with applicable U.S. Food and Drug Administration ("FDA") regulations or from otherwise using the term "natural" as may be necessary to comply with federal, state, or local laws or regulations.

4.      The terms and requirements of the relief described in Section IV.F.1 shall expire on the earliest of the following dates: (i) three (3) years after the Final Settlement Date; or (ii) the date upon which there are changes to any applicable statute, regulation, or other law that Defendant reasonably believes would require a modification to any of the product labeling or advertising in order to comply with the applicable statute, regulation, or law; or (iii) the date upon which there are any changes to any applicable federal or state statutes, regulations, laws, guidances, or pronouncements

17

that would allow Defendant to label products that contain GMO, Synthetic Ingredients, and/or artificial flavors and ingredients as "Natural,"  or phrases containing the word "Natural,", including, but not limited to, changes in Food and Drug Administration (FDA), Federal Trade Commission, U.S. Department of Agriculture and other applicable government agencies' regulations, guidances or pronouncements. Plaintiffs and Class Counsel agree that this Agreement does not preclude Defendant from making  disclosures or any labeling or advertising changes that (i) Defendant reasonably believes are necessary to comply with any statute, regulation, guidance, pronouncement, or law of any kind (including but not limited to the Federal Food, Drug, and Cosmetic Act, FDA regulations, and/or applicable state law); or (ii) are necessitated by product changes and/or reformulations to ensure that Defendant provides accurate product descriptions.

## V.      **NOTICE TO THE CLASS**

A.      <u>Duties of the Settlement Administrator</u>:

1.      Subject to the approval of the Court, Angeion Group shall be retained as the Settlement Administrator to help implement the terms of this Agreement.  Following the Court's issuance of the Notice Approval Order and the Court's appointment of the proposed Settlement Administrator, the Settlement Administrator shall disseminate notice to the Class as provided for in the Declaration of the Settlement Administrator, attached as Exhibit 8 to this Agreement, as specified in the Notice Approval Order and in this Agreement, and in order to comply with all applicable laws, including, but not limited to, the Due Process Clause of the Constitution of the United States.  The Settlement Administrator shall abide by the terms, conditions, and obligations of this Agreement, the Settlement Claim Procedures and Claim Calculation Protocol, and the Orders issued by the Court in this Action.

2.      In addition to the functions specified elsewhere in this Agreement, the Settlement Administrator shall be responsible for, without limitation, consulting on and designing the Notice to the Class via various forms of media, including implementing the media purchases.  In particular, the Settlement Administrator shall be responsible for: (a) arranging for the publication on the Settlement Website of the Summary Settlement Notice and Class Notice; (b) designing and

implementing Notice to the Class by various electronic media, including targeted banner advertisements to reach the target audience; (c) responding to requests from Class Counsel and/or Utz's Counsel; and (d) otherwise implementing and/or assisting with the dissemination of the Notice of the Settlement.

3.      The Settlement Administrator shall be responsible for, without limitation, dissemination of the Class Notice as provided in this Agreement, and implementing the terms of the Claim Process and related administrative activities that include communications with governmental agencies and authorities and Class Members concerning the Settlement, Claim Process, and their options thereunder.  In particular, the Settlement Administrator shall be responsible for: (a) disseminating the Class Notice as set forth in the Declaration of the Settlement Administrator attached hereto as Exhibit 8; (b) making mailings, if any, required under the terms of this Agreement; (c) establishing a website that contains important documents, including the Claim Form that can be completed and submitted online; (d) establishing a toll-free voice response unit to which Class Members may refer for information about the Action and the Settlement; (e) receiving and maintaining on behalf of the Court any Class Member correspondence regarding requests for exclusion and objections to the Settlement; (f) forwarding inquiries from Class Members to Class Counsel or their designee for a response, if warranted; (g) establishing a post office box for the receipt of Claim Forms, exclusion requests, and any correspondence; (h) reviewing Claim Forms according to the review protocols set forth in this Agreement and in the Settlement Claim Procedures and Claim Calculation Protocol, attached hereto as Exhibit 7; (i) otherwise implementing and/or assisting with the Claim review process and payment of the Claims, pursuant to the terms and conditions of this Agreement; and (j) on behalf of Utz, provide requisite notice to governmental agencies and authories, including, without limitation, notice pursuant to 28 U.S.C. § 1715(a) and 28 U.S.C. § 1715(b)).

4.      Because the names of Class Members and other personal information about them will be provided to the Settlement Administrator for purposes of providing cash benefits and processing opt-out requests, the Settlement Administrator will execute a confidentiality and non-disclosure agreement with Utz, Defense Counsel, and Class Counsel and will take all reasonable steps

to ensure that any information provided to it by Class Members and/or the Parties will be used solely for the purpose of effecting this Settlement.

     5.     The Settlement Administrator shall administer the Settlement in accordance with the terms of this Agreement (including but not limited to the Settlement Claim Procedures and Claim Calculation Protocol, attached hereto as Exhibit 7) and, without limiting the foregoing, shall:

     a.     Treat any and all documents, communications, and other information and materials received in connection with the administration of the Settlement as confidential and shall not disclose any or all such documents, communications, or other information to any person or entity except as provided for in this Agreement or by court order;

     b.     Receive opt-out and other requests from members of the Class to exclude themselves from the Settlement and provide to Class Counsel and Defense Counsel a copy thereof within seven (7) days of receipt.  If the Settlement Administrator receives any exclusion forms or other requests from Class Members to exclude themselves from the Settlement after the deadline for the submission of such forms and requests, the Settlement Administrator shall promptly provide Class Counsel and Defense Counsel with copies thereof; and

     c.     Receive and maintain on behalf of the Court all correspondence from any Class Member regarding the Settlement.

     6.     If the Settlement Administrator makes a material or fraudulent misrepresentation to, or conceals requested material information from Class Counsel, Utz, or Utz's Counsel, then the Party to whom the misrepresentation is made shall, in addition to any other appropriate relief, have the right to petition the Court to immediately replace the Settlement Administrator.  If the Settlement Administrator fails to perform adequately on behalf of the Parties, the Parties may agree to petition the Court to replace the Settlement Administrator.  Neither Party shall unreasonably withhold consent to remove the Settlement Administrator.  The Parties will attempt to resolve any disputes regarding the retention or dismissal of the Settlement Administrator in good faith, and, if they are unable to do so, will refer the matter to the Court for resolution.

     7.     The Settlement Administrator shall begin accepting Claim Forms as they are

submitted by Class Members for processing.

8.    Not later than ten (10) calendar days before the date of the Fairness Hearing, the Settlement Administrator shall file with the Court, and provide to Class Counsel and Utz's Counsel, a declaration: (a) listing those persons who have opted out or excluded themselves from the Settlement; and (b) the details outlining the scope, methods and results of the Notice program.

9.    The Settlement Administrator shall promptly provide copies of any requests for exclusion, objections, and/or related correspondence to Class Counsel and Utz's Counsel.

10.    The Settlement Administrator shall administer the Settlement in accordance with the terms of this Agreement and in accordance with the Claim Procedure and Claim Calculation Protocol, attached hereto as Exhibit 7.

11.    Any Class Member who, in accordance with the terms and conditions of this Agreement, neither seeks exclusion from the Class nor files a Claim Form, will not be entitled to receive any payment pursuant to this Settlement, but will be bound together with all other Class Members by all of the terms of this Agreement, including the terms of the Final Order and Final Judgment to be entered in the Action and the Releases provided for in this Agreement, and will be barred from bringing any action in any forum (state or federal) against any of the Released Parties concerning the matters subject to the Release.

12.    Claim Forms that do not meet the requirements set forth in this Agreement, in the Class Notice, and in the Claim Form instructions shall be rejected.  Where a good faith basis exists, the Settlement Administrator may reject a Class Member's Claim Form for, among other reasons, the following:

a.    The Class Member failed to provide adequate support of his or her claim pursuant to a request of the Settlement Administrator;

b.    The Class Member purchased products that are not covered by the terms of this Settlement;

c.    The Class Member failed to fully complete and/or sign the Claim Form;

d.    The Class Member submitted an illegible Claim Form;

       e.        More than one Claim Form is submitted by persons who reside in the same household;

       f.        The Claim Form is fraudulent;

       g.        The Claim Form is duplicative of another Claim Form;

       h.        The person submitting the Claim Form is not a Class Member;

       i.        The person submitting the Claim Form is requesting that funds be paid to a person or entity that is not the Class Member for whom the Claim Form is submitted;

       j.        Failure to submit a Claim Form by the end of the Claim Period; and/or

       k.        The Claim Form otherwise does not meet the requirements of this Agreement.

13.      The Settlement Administrator shall determine whether a Claim Form meets the requirements set forth in this Agreement.  Each Claim Form shall be submitted to and reviewed by the Settlement Administrator, who shall determine in accordance with the terms and conditions of this Agreement the extent, if any, to which each Claim shall be allowed.  The Settlement Administrator shall have the authority to determine whether a Claim by any Class Member is complete and timely. The Settlement Administrator shall use all reasonable efforts and means to identify and reject duplicate and/or fraudulent Claims, including, without limitation, indexing all funds provided to Class Members.

14.      Any Class Member who fails to submit a Claim Form by the end of the Claim Period shall be forever barred from receiving any benefit pursuant to this Agreement, but shall in all other respects be bound by all of the terms of this Agreement, the terms of the Final Order and Final Judgment to be entered in the Action, and the releases provided for in this Agreement, and will be barred from bringing any action in any forum (state or federal) against any of the Released Parties concerning any of the matters subject to the Release.  The Claim Form shall be deemed to have been submitted when it is actually received by the Settlement Administrator.

15.      Class Counsel and Defense Counsel shall have the right to inspect the Claim Forms and supporting documentation received by the Settlement Administrator at any time upon

reasonable notice.

16.    Utz and the Released Parties are not obligated to (and will not be obligated to) compute, estimate, or pay any taxes on behalf of Plaintiffs, any Class Member, Class Counsel, or the Settlement Administrator.

B.    Class Notice:

1.    Dissemination of the Class Notice:

a.    Beginning not later than fifteen (15) calendar days after entry of the Notice Approval Order, the Settlement Administrator shall commence dissemination of the Class Notice as described in the Declaration of the Settlement Administrator attached here to as Exhibit 8.

b.    Utz's Counsel shall provide to the Settlement Administrator, within ten (10) business days of the entry of the Notice Approval Order, a list of any counsel for anyone who has litigation against Utz that involves substantially similar allegations as the Action involving the Eligible Products. The Settlement Administrator shall mail copies of the Class Notice to all such legal counsel. Utz will promptly direct the Settlement Administrator to serve the Class Notice on counsel for any Class Members who subsequently initiate litigation, arbitration, or other proceedings against Utz relating to claims alleging events occurring during the Class Period, the Eligible Products, and/or otherwise involving the Release.

2.    Contents of the Class Notice:  The Claim Form and the Class Notice shall be in forms substantially similar to the documents attached to this Agreement as Exhibits 1 and 2, respectively, and shall advise Class Members of the following:

a.    General Terms:  The Class Notice shall contain a plain and concise description of the nature of the Action and the proposed Settlement, including information on the identity of Class Members, how the proposed Settlement would provide relief to the Class and Class Members, what claims are released under the proposed Settlement and other relevant terms and conditions.

b.    Opt-Out Rights:  The Class Notice shall inform Class Members that they have the right to opt out of the Settlement.  The Class Notice shall provide the deadlines and

procedures for exercising this right.

        c.      <u>Objection to Settlement</u>:  The Class Notice shall inform Class Members of their right to object to the proposed Settlement and appear at the Fairness Hearing.  The Class Notice shall provide the deadlines and procedures for exercising these rights.

        d.      <u>Fees and Expenses</u>:  The Class Notice shall inform Class Members about the amounts being sought by Class Counsel as Attorneys' Fees and Expenses and the individual awards to Plaintiffs, and that such amounts will be paid out of the Settlement Fund.

        e.      <u>Consumer Information</u>:  The Class Notice shall inform the Class Members that any information they provide may be submitted to a federal or state agency in the administration of this relief.

        f.      <u>Claim Form</u>:  The Class Notice shall include the Claim Form, which shall inform each Class Member that he or she must fully complete and timely return the Claim Form within the Claim Period to be eligible to obtain relief pursuant to this Agreement.

        C.      <u>The Summary Settlement Notice</u>:  The Settlement Administrator shall publish the Summary Settlement Notice on the Settlement Website as described in the Declaration of the Settlement Administrator, attached hereto as Exhibit 8. The Summary Settlement Notice agreed upon by the Parties is in the form substantially similar to the one attached to this Agreement as Exhibit 6.

        D.      <u>Settlement Website</u>:  Prior to the dissemination of the Notice pursuant to Sections V.B and V.C, the Settlement Administrator shall establish a Settlement Website, www.UtzSettlement.com, which domain name shall be owned by Utz and licensed by Utz to the Settlement Administrator to use solely for the purposes of this Agreement, that will inform Class Members of the terms of this Agreement, their rights, dates, deadlines, and related information.  The website shall include, in .pdf format, materials agreed upon by the Parties and/or required by the Court.  Banner ads on the Internet shall direct Class Members to the website.

        E.      <u>Toll-Free Telephone Number</u>:  Prior to the dissemination of the Notice pursuant to Sections V.B and V.C, the Settlement Administrator shall establish a toll-free telephone number that will provide Settlement-related information to Class Members.

## VI.    REQUESTS FOR EXCLUSION

A.      Class Members may elect to opt out of the Class or the Settlement, relinquishing their rights to benefits under this Agreement.  Members of the Class who opt out of the Settlement will not release their claims pursuant to this Agreement.  Putative Class Members wishing to opt out of the Settlement must send to the Settlement Administrator by U.S. Mail a personally signed letter including their name and address, and providing a clear statement communicating that they elect to be excluded from the Class.  Any request for exclusion or opt-out must be postmarked on or before the opt-out deadline date specified in the Notice Approval Order.  The date of the postmark on the return-mailing envelope shall be the exclusive means used to determine whether a request for exclusion has been timely submitted.  The Settlement Administrator shall forward copies of any written requests for exclusion to Class Counsel and Utz's Counsel.  The Settlement Administrator shall file a declaration reflecting all requests for exclusion with the Court no later than ten (10) calendar days before the Fairness Hearing.

B.      Any potential Class Member who does not file a timely and proper written request for exclusion as provided in the preceding Section VI.A shall be bound by all subsequent proceedings, orders, and judgments, including, but not limited to, the Release, in the Action, even if he or she has litigation pending or subsequently initiates litigation against Utz relating to the claims and transactions released in the Action.  Utz's willingness to enter into this Agreement is conditioned upon this Agreement providing adequate protections that it will resolve all or substantially all of the Class Members' claims against Utz. Utz retains the right to withdraw from this Agreement if the number of Class Members who properly and timely exercise their rights under this Agreement to exclude themselves from the Class exceeds two hundred fifty (250) Class Members.  In the event that Utz wishes to exercise its right to withdraw from this Agreement pursuant to this section, it must notify Class Counsel of its intention to withdraw from and terminate this Agreement in writing, within five (5) business days after receipt of the Settlement Administrator's filing of the declaration regarding all requests for exclusion, as required by Section VI.A, above.  In the event that Utz exercises its option to withdraw from and terminate this Agreement under this section, this Agreement and the Settlement

proposed in this Agreement shall become null and void and the Parties will be returned to their respective positions existing immediately before the execution of this Agreement.

## VII.   OBJECTIONS TO SETTLEMENT AND APPEARANCE AT FAIRNESS HEARING

A.      Any Class Member who has not filed a timely written request for exclusion and who wishes to object to the fairness, reasonableness, or adequacy of this Agreement or the proposed Settlement, or to the award of Attorneys' Fees and Expenses, or the individual Service Awards to Plaintiffs, must deliver to the Class Counsel and to Utz's Counsel identified in the Class Notice, and file with the Court (through the Case Management/Electronic Case Files ("CM/ECF") or through any other method in which the Court will accept filings), no later than the objection deadline date specified in the Notice Approval Order, or as the Court otherwise may direct, a written statement of the objections, as well as the specific reason(s), if any, for each objection, including any legal support the Class Member wishes to bring to the Court's attention, any evidence or other information the Class Member wishes to introduce in support of the objections, and a statement of whether the Class Member intends to appear and argue at the Fairness Hearing.  Class Members may do so either on their own or through an attorney retained at their own expense.  The Parties shall request that the Court allow any interested party to file a reply to any objection, as described in this Section VII.A, no later than seven (7) calendar days before the Fairness Hearing.

B.      Any Class Member, including one who files and serves a written objection, as described in the preceding Section VII.A, may appear at the Fairness Hearing, either in person or through personal counsel hired at the Class Member's expense, to object to or comment on the fairness, reasonableness, or adequacy of this Agreement or the proposed Settlement, or to the award of Attorneys' Fees and Expenses or any Service Award to the individual Plaintiffs.  Class Members or their attorneys who intend to make an appearance at the Fairness Hearing must deliver a notice of intention to appear to Class Counsel identified in the Class Notice and to Utz's Counsel, and file said notice with the Court (through CM/ECF or through any other method in which the Court will accept filings), no later than the date specified in the Notice Approval Order, or as the Court may otherwise direct.

C.       Any Class Member who fails to comply with the provisions of Section VII.A above shall waive and forfeit any and all rights he or she may have to object, and shall be bound by all the terms of this Agreement and by all proceedings, orders, and judgments, including, but not limited to, the Release, in the Action.

D.       Any Class Member who objects to the Settlement shall be entitled to all of the benefits of the Settlement if this Agreement and the terms contained therein are approved, as long as the objecting Class Member complies with all requirements of this Agreement applicable to Class Members, including the timely submission of Claim Forms and other requirements contained in this Agreement.

## VIII.   RELEASE AND WAIVER

A.       The Parties agree to the following Release and waiver, which shall take effect upon entry of the Final Order and Final Judgment.

B.       In consideration for the benefits described in this Agreement, the Releasing Parties fully, finally and forever release, relinquish, acquit, and discharge the Released Parties from the Released Claims.

C.       Upon entry of the Final Order and Final Judgment, each and every Releasing Party shall be permanently barred and enjoined from initiating, asserting, and/or prosecuting any claim covered by the Release against any Released Party in any court or any forum whatsoever.

D.       Plaintiffs represent and warrant that they are the sole and exclusive owners of all claims that they are personally releasing under this Agreement.  Plaintiffs further acknowledge that they have not assigned, pledged, or in any manner whatsoever, sold, transferred, assigned or encumbered any right, title, interest or claim arising out of or in any way whatsoever pertaining to the claims subject to the Release, including without limitation, the Released Claims and any claim for benefits, proceeds or value under the Action.

E.       Without in any way limiting its scope, and, except to the extent otherwise specified in this Agreement, this Release covers by example and without limitation, any and all claims for attorneys' fees, costs, expert fees, consultant fees, interest, litigation fees, or any other fees, costs,

27

and/or disbursements incurred by Class Counsel, or by Plaintiffs or the Class Members.

F.    Class Members acknowledge that they may hereafter discover facts in addition to or different from those that they now know or believe to be true concerning the subject matter of the Release, but nevertheless fully, finally and forever settle and release any and all claims covered by the Release, known or unknown, suspected or unsuspected, contingent or non-contingent, which now exist, may hereafter exist, or heretofore have existed that arose, or are based on actions, conduct, events, transactions or omissions occurring on or before the entry of the Final Order and Final Judgment, without regard to subsequent discovery or the existence of such different or additional facts concerning any of the Released Parties.

G.    Nothing in this Release shall preclude any action to enforce the terms of the Agreement, including participation in any of the processes detailed in the Agreement.

H.    Plaintiffs and Defendant hereby agree and acknowledge that the provisions of this Release together constitute an essential and material term of the Agreement and shall be included in any Final Order and Final Judgment entered by the Court.

## IX.    ATTORNEYS' FEES AND EXPENSES AND INDIVIDUAL PLAINTIFF AWARDS

A.    Class Counsel may petition the Court for a Service Award for each Plaintiff ("Service Award"), to be paid out of the Settlement Fund.  The purpose of such awards shall be to compensate Plaintiffs for efforts and risks taken by them on behalf of the Class.  Utz agrees not to object to a petition for Service Awards of up to $5,000 to each Plaintiff.  Utz further agrees to pay or cause to be paid from the Settlement Fund Service Awards in the amounts approved by the Court within ten (10) calendar days after the occurrence of the Final Settlement Date and in accordance with the instructions provided by Class Counsel or as otherwise directed by the Court.  Utz shall have no obligation to pay any Service award if the Final Settlement Date does not occur.

B.    Class Counsel will make an application to the Court for an award of reasonable attorneys' fees plus expenses incurred up to the submission of the application to the Court prior to the Fairness Hearing, which shall be paid out of the Settlement Fund and be the sole aggregate compensation payable by Defendant for Class Counsel.  The Court shall determine the amount of the

Attorneys' Fees and Expenses. Class Counsel agrees that once Defendant has fully funded the Settlement Fund, Defendant's obligations to Class Counsel shall be fully satisfied and discharged, and Class Counsel shall have no further or other claim against Utz. Utz agrees to pay and shall pay or cause to be paid Attorneys' Fees from the Settlement Fund to Class Counsel in the amount approved by the Court within ten (10) calendar days after the occurrence of the Final Settlement Date. Further, Utz shall have no obligation to pay Attorneys' Fees to Class Counsel if the Final Settlement Date does not occur.

C.     The procedure for and the allowance or disallowance by the Court of any application for Service Awards to the Plaintiffs and/or any Attorneys' Fees and Expenses, or reimbursement to be paid to Class Counsel are not part of the Settlement of valid and approved Claims as set forth in this Settlement Agreement, although such amounts will be paid from the Settlement Fund, and are to be considered by the Court separately from the Court's consideration of the fairness, reasonableness, and adequacy of the settlement of valid and approved Claims as set forth in this Settlement Agreement. Any such separate order, finding, ruling, holding, or proceeding relating to any such applications for Attorneys' Fees and Expenses, or any separate appeal from any separate order, finding, ruling, holding, or proceeding relating to them or reversal or modification of them, shall not operate to terminate or cancel this Agreement or otherwise affect or delay the finality of the Final Order and Final Judgment but will delay the Final Settlement Date and, thereby, payment of the Service Award and Attorneys' Fees and Expenses.

D.     Any order or proceeding relating to the application for the Attorneys' Fees and Expenses and Service Awards, or any appeal from any order relating thereto or reversal or modification thereof, will not operate to terminate or cancel this Agreement or affect or delay the finality of the Final Order and Final Judgment approving this Agreement, but will delay the Final Settlement Date and, thereby payment of the Service Award and Attorneys' Fees and Expenses.

E.     Utz shall not be liable for or obligated to pay any fees, expenses, costs, or disbursements to, or incur any expense on behalf of, any person or entity, either directly or indirectly, in connection with the Action or this Agreement, other than the amount or amounts expressly provided

29

for in this Agreement.

## X.   NOTICE APPROVAL ORDER, FINAL ORDER, FINAL JUDGMENT, AND RELATED ORDERS

A.   The Parties shall seek from the Court, within fifteen (15) business days after the execution of this Agreement or as otherwise directed by the Court, a Notice Approval Order in a form substantially similar to Exhibit 5.  The Notice Approval Order shall, among other things:

1.   Certify a nationwide settlement-only Class, approve Plaintiffs Matt DiFrancesco, Angela Mizzoni, and Lynn Marrapod as Class representatives and appoint Robert Ahdoot and Tina Wolfson on behalf of Ahdoot & Wolfson, PC as Class Counsel, pursuant to Fed. R. Civ. P. 23;

2.   Require the dissemination of the Notice and the taking of all necessary and appropriate steps to accomplish this task;

3.   Determine that the notice complies with all legal requirements, including, but not limited to, the Due Process Clause of the United States Constitution;

4.   Schedule a date and time for a Fairness Hearing to determine whether the Notice Approval Order should be finally approved by the Court;

5.   Require Class Members who wish to exclude themselves to submit an appropriate and timely written request for exclusion as directed in this Agreement and the Class Notice and that a failure to do so shall bind those Class Members who remain in the Class;

6.   Require Class Members who wish to object to this Agreement to submit an appropriate and timely written statement as directed in this Agreement and the Class Notice;

7.   Require Class Members who wish to appear at the Fairness Hearing to object to this Agreement to submit an appropriate and timely written statement as directed in this Agreement and the Class Notice;

8.   Require attorneys representing individual Class Members, at their own expense, to file a notice of appearance as directed in this Agreement and the Class Notice;

9.   Issue a preliminary injunction pursuant to the Agreement;

10.     Appoint the Settlement Administrator;

11.     Authorize Utz to take all necessary and appropriate steps to establish the means necessary to implement this Agreement; and

12.     Issue other related orders to effectuate the approval of notice to the Class and the Settlement.

B.     After the Fairness Hearing, the Parties shall seek to obtain from the Court a Final Order and Final Judgment in the forms substantially similar to Exhibits 3 and 4, respectively.  The Final Order and Final Judgment shall, among other things:

1.     Find that the Court has personal jurisdiction over all Class Members, the Court has subject matter jurisdiction over the claims asserted in the Action, and that venue is proper;

2.     Finally approve this Agreement and the Settlement, pursuant to Fed. R. Civ. P. 23;

3.     Finally certify the Class for settlement purposes only;

4.     Find that the Notice and the Notice dissemination methodology complied with all laws, including, but not limited to, the Due Process Clause of the United States Constitution;

5.     Dismiss the Action with prejudice;

6.     Incorporate the Release set forth in this Agreement and make the Release effective as of the date of the Final Order and Final Judgment;

7.     Issue a permanent injunction pursuant to this Agreement;

8.     Authorize the Parties to implement the terms of this Agreement;

9.     Retain jurisdiction relating to the administration, consummation, enforcement, and interpretation of this Agreement, the Final Order and Final Judgment, and for any other necessary purpose; and

10.     Issue related Orders to effectuate the final approval of this Agreement and its implementation.

## XI.     MODIFICATION OR TERMINATION OF THIS AGREEMENT

A.     The terms and provisions of this Agreement may be amended, modified, or expanded

by written agreement of the Parties and approval of the Court; provided, however that, after entry of the Final Order and Final Judgment, the Parties may by written agreement effect such amendments, modifications, or expansions of this Agreement and its implementing documents (including all exhibits hereto) without further notice to the Class or approval by the Court if such changes are consistent with the Court's Final Order and Final Judgment and do not limit the rights of Class Members under this Agreement.

B.      This Agreement shall terminate at the discretion of either Utz, through Utz's Counsel, or Plaintiffs, through Class Counsel, if: (1) the Court, or any appellate court(s), rejects, modifies, or denies approval of any portion of this Agreement that the terminating Party in his or her sole judgment and discretion reasonably determines is material, including, without limitation, the terms of relief, the findings, or conclusions of the Court, the provisions relating to Notice, the definition of the Class, and/or the terms of the Release; or (2) the Court, or any appellate court(s), does not enter or completely affirm, or alters or expands, any portion of the Final Order and Final Judgment, or any of the Court's findings of fact or conclusions of law, that the terminating Party in his or her sole judgment and discretion reasonably determines is material.  Except as otherwise provided in this Agreement, the terminating Party must exercise the option to withdraw from and terminate this Agreement, as provided in this Section XI.B, by a signed writing served on the other Parties no later than twenty (20) calendar days after receiving notice of the event prompting the termination.  In the event that a terminating Party exercises his or her option to withdraw from and terminate this Agreement, this Agreement and the Settlement proposed in this Agreement shall become null and void and the Parties will be returned to their respective positions existing immediately before the execution of this Agreement.

C.      If an option to withdraw from and terminate this Agreement arises under Section IX.B above, neither Plaintiffs nor Utz is required for any reason or under any circumstance to exercise that option and any exercise of that option shall be in good faith.

D.      If this Agreement is terminated pursuant to Section IX.B, above, then:

1.      This Agreement shall be null and void and shall have no force or effect, and no

Party to this Agreement shall be bound by any of its terms, except for the terms of this Section XI.D;

2.      The Parties will petition to have any stay orders entered pursuant to this Agreement lifted;

3.      All of the provisions of this Agreement, and all negotiations, statements, and proceedings relating to it shall be without prejudice to the rights of Utz, Plaintiffs or any Class Member, all of whom shall be restored to their respective positions existing immediately before the execution of this Agreement, except that the Parties shall cooperate in requesting that the Court set a new scheduling order such that neither party's substantive or procedural rights is prejudiced by the attempted Settlement;

4.      Released Parties expressly and affirmatively reserve all defenses, arguments, and motions as to all claims that have been or might later be asserted in the Action, including, without limitation, the argument that the Action may not be litigated as a class action;

5.      Plaintiffs and all other Class Members, on behalf of themselves and their heirs, assigns, executors, administrators, predecessors, and successors, expressly and affirmatively reserve and do not waive all motions as to, and arguments in support of, all claims, causes of actions or remedies that have been or might later be asserted in the Action including, without limitation, any argument concerning class certification, consumer fraud, and treble, punitive, or other damages;

6.      Neither this Agreement, the fact of it having been made, nor the negotiations leading to it, nor any discovery or action taken by a Party or Class Member pursuant to this Agreement, or any documents or communications pertaining to this Agreement shall be admissible or entered into evidence for any purpose whatsoever in the Action or in any proceeding, other than to enforce the terms of this Agreement;

7.      The Parties stipulate that any Settlement-related order(s) or judgment(s) entered in this Action after the date of execution of this Agreement shall be deemed vacated and shall be without any force or effect;

8.      All costs incurred by the Settlement Adminstrator prior to the termination of this Agreement pursuant to this Section XI, including but not limited to, Notice, publication, and

administration costs will be paid from the Settlement Fund.  Neither the Class, Plaintiffs nor Class

Counsel shall be responsible for any of these costs or other Settlement-related costs, other than their

Attorneys' Fees and Expenses;

        9.     Notwithstanding the terms of this Section IX.D, if the Settlement is not

consummated, Class Counsel may include any time spent in Settlement efforts as part of any statutory

fee petition filed at the conclusion of the case, and Utz reserves the right to object to the

reasonableness of such requested fees and/or that the fees for such time and costs related thereto are

not recoverable and should not be awarded; and

     E.     Notwithstanding any provision herein, the amount of any award by the Court, if any,

for the Service Award or the Attorneys' Fees and Expenses, or the denial of the Service Award or

Attorneys' Fees and Expenses, shall not operate to serve as a basis to terminate or cancel this

Agreement.

## XII.    **GENERAL MATTERS AND RESERVATIONS**

     A.     Except as otherwise set forth herein, the obligation of the Parties to conclude the

proposed Settlement is and shall be contingent upon entry by the Court of the Final Order and Final

Judgment approving this Agreement and the Settlement, from which the time to appeal has expired or

which has remained unmodified after any appeal(s).

     B.     This Agreement reflects, among other things, the compromise and settlement of

disputed claims among the Parties hereto, and neither this Agreement nor the Releases provided in it,

nor any consideration for this Agreement, nor any actions taken to carry out this Agreement are

intended to be, nor may they be deemed or construed to be, an admission or concession of liability, or

the validity of any claim, or defense, or of any point of fact or law (including but not limited to matters

respecting class certification) on the part of any Party.  Utz expressly denies the allegations of

Plaintiffs' complaints.  Neither this Agreement, nor the fact of settlement, nor the settlement

proceedings, nor settlement negotiations, nor any related document, shall be used as an admission of

any fault or omission by Utz, or be offered or received in evidence as an admission, concession,

presumption, or inference of any wrongdoing by Utz in any proceeding, other than such proceedings

as may be necessary to consummate, interpret, or enforce this Agreement following the entry of the Final Order and Final Judgment.

C.      The Parties and their counsel agree to keep the existence and contents of this Agreement confidential until the date on which this Agreement is filed with the Court, provided, however, that this section shall not prevent Utz from disclosing such information, prior to the date on which this Agreement is filed, to state and federal agencies, independent accountants, actuaries, advisors, financial analysts, insurers, indemnitees, or attorneys, nor shall it prevent the Parties and their counsel from disclosing such information to persons or entities (such as experts, courts, co-counsel, and/or administrators) to whom the Parties agree disclosure must be made in order to effectuate the terms and conditions of this Agreement; provided further, that Utz may disclose publicly the terms of the Agreement that it deems necessary to carry out its business operations and obligations and to meet its regulatory obligations or fiduciary duties.

D.      Plaintiffs and Plaintiffs' Counsel agree that the confidential information made available to them solely through the settlement process was made available, as agreed, on the condition that neither Plaintiffs nor their counsel may disclose it to third parties (other than experts or consultants retained by Plaintiffs in connection with this case); that it not be the subject of public comment; that it not be used by Plaintiffs or Plaintiffs' Counsel in any way in this litigation should the Settlement not be consummated, and that it is to be returned if the Settlement is not concluded; provided, however, that nothing contained in this Agreement shall prohibit Plaintiffs from seeking such information through formal discovery or from referring to the existence of such information in connection with the Settlement of this litigation.

E.      Within one hundred and eighty (180) calendar days after the Final Settlement Date (unless the time is extended by agreement of the Parties), Plaintiffs' Counsel, and any expert or other consultant employed by them in such capacity or any other individual with access to documents provided by Utz to Plaintiffs' Counsel, shall either: (i) return to Utz's Counsel, all such documents and materials (and all copies of which documents in whatever form made or maintained) produced by or on behalf of Utz in the Action and any and all handwritten notes summarizing, describing, or referring

35

to such documents; or (ii) <u>certify in writing</u> to Utz that all such documents and materials (and all copies of such documents in whatever form made or maintained) produced by or on behalf of Utz in the Action and any and all handwritten notes summarizing, describing, or referring to such documents have been destroyed, provided, however, that this section shall not apply to any documents made part of the record in connection with a Claim, nor to any documents made part of a Court filing, nor to Plaintiffs' Counsel's work product.  Utz's Counsel agrees to hold all documents returned by Plaintiffs' Counsel, and any expert or other consultant or any other individual employed by Plaintiffs' Counsel in such capacity with access to documents provided by or on behalf of Utz until one year after the distribution of the Settlement Fund Balance to Class Members who submitted valid and acceptable Claim Forms.

F.   Two (2) years after the distribution of the Settlement Fund Balance to Class Members who submitted valid and acceptable Claim Forms, the Settlement Administrator shall destroy any and all documents and materials related to the Action or the Settlement, including any Claim Forms, information related to Class Members, and any and all information and/or documentation submitted by or relating to Class Members.

G.   Utz's execution of this Agreement shall not be construed to release — and Utz expressly does not intend to release — any claim Utz may have or make against any insurer-or third party for contribution or indemnification or any cost or expense incurred in connection with this Settlement, including, without limitation, for attorneys' fees,costs, and expenses.

H.   Class Counsel represents that: (1) it is authorized by Plaintiffs to enter into this Agreement on behalf of Plaintiffs; and (2) it is seeking to protect the interests of the Class.  Class Counsel shall take all necessary actions to accomplish approval of the Settlement, the Class Notice, and dismissal of the Action, pursuant to the terms and conditions of this Agreement.

I.   Plaintiffs represent and certify that: (1) they have agreed to serve as representatives of the Class; (2) they are willing, able, and ready to perform all of the duties and obligations of representatives of the Class; (3) they have read the operative complaint, or have had the contents of such pleadings described to them; (4) they are familiar with the results of the fact-finding undertaken

36

by Class Counsel; (5) they have read this Agreement or have received a detailed description of it from Class Counsel and they have agreed to its terms; (6) they have consulted with Class Counsel about the Action and this Agreement and the obligations imposed on representatives of the Class; (7) they have authorized Class Counsel to execute this Agreement on their behalf; and (8) they shall remain and serve as representatives of the Class until the terms of this Agreement are effectuated, this Agreement is terminated in accordance with its terms, or the Court at any time determines that Plaintiffs cannot represent the Class.

   J.  Defendant represents and warrants that the individual(s) executing this Agreement is/are authorized to enter into this Agreement on behalf of Defendant.

   K.  The Parties (including their counsel, successors, and assigns) agree to cooperate fully and in good faith with one another and to use their best efforts to effectuate the Settlement, including without limitation in seeking preliminary review and authorization of notice and final Court approval of this Agreement and the Settlement embodied in this Agreement, carrying out the terms of this Agreement, and promptly agreeing upon and executing all such other documentation as may be reasonably required to obtain final approval by the Court of the Settlement.  In the event that the Court fails to approve the Settlement or fails to issue the Final Order and Final Judgment, the Parties agree to use all reasonable efforts, consistent with this Agreement and subject to Section XI.B herein, to cure any defect identified by the Court.  Each Party will cooperate with the other Party in connection with effectuating the Settlement or the administration of Claims thereunder.  Any requests for cooperation shall be narrowly tailored and reasonably necessary for the requesting Party to recommend the Settlement to the Court, and to carry out its terms.

   L.  This Agreement, complete with its exhibits, sets forth the sole and entire agreement among the Parties with respect to its subject matter, and it may not be altered, amended, or modified except by written instrument executed by Class Counsel and Utz's Counsel.  The Parties expressly acknowledge that no other agreements, arrangements, or understandings not expressed in this Agreement exist among or between them and that in deciding to enter into this Agreement, they rely

solely upon their judgment and knowledge.  This Agreement supersedes any prior agreements, understandings, or undertakings (written or oral) by and between the Parties regarding the subject matter of this Agreement.

       M.     This Agreement and its exhibits, and any amendments thereto, shall be governed by and interpreted according to the laws of the State of Massachusetts, notwithstanding its conflict of laws provisions.

       N.     Any disagreement and/or action to enforce this Agreement shall be commenced and maintained only in the Court in which this Action is pending.

       O.     Whenever this Agreement requires or contemplates that one of the Parties shall or may give notice to the other, notice shall be provided by e-mail or next-day (excluding Saturdays, Sundays and Legal Holidays) express delivery service as follows and shall be effective upon receipt:

          1.     *If to Utz, then to*:

               Richard Fama
               Cozen O'Connor
               45 Broadway, 16th Floor
               New York, New York 10006
               Telephone: 212-908-1229
               Facsimile:  866-263-1334
               E-mail: rfama@cozen.com

2.      *If to Plaintiffs, then to*:

>  Tina Wolfson
>  Robert Ahdoot
>  AHDOOT & WOLFSON, PC
>  1016 Palm Avenue
>  West Hollywood, California 90069
>  Telephone: 310-474-9111
>  Facsimile: 310-474-8585
>  E-mail: twolfson@ahdootwolfson.com
>         rahdoot@ahdootwolfson.com

P.      All time periods set forth herein shall be computed in calendar days unless otherwise expressly provided.  In computing any period of time prescribed or allowed by this Agreement or by order of the Court, the day of the act, event, or default from which the designated period of time begins to run shall not be included.  The last day of the period so computed shall be included, unless it is a Saturday, a Sunday, or a Legal Holiday (as defined in Fed. R. Civ. P. 6(a)(6)), or, when the act to be done is the filing of a paper in court, a day on which weather or other conditions have made the office of the clerk of the court inaccessible, in which event the period shall run until the end of the next day that is not one of the aforementioned days.

Q.      The Parties reserve the right, subject to the Court's approval, to agree to any reasonable extensions of time that might be necessary to carry out any of the provisions of this Agreement.

R.      The Class, Plaintiffs, Class Counsel, Utz, or Utz's Counsel shall not be deemed to be the drafter of this Agreement or of any particular provision, nor shall they argue that any particular provision should be construed against its drafter or otherwise resort to the *contra proferentem* canon of construction.  All Parties agree that the Parties' counsel drafted this Agreement during and as a result of extensive arms-length negotiations.  No parol or other evidence may be offered to explain, construe, contradict, or clarify its terms, the intent of the Parties or their counsel, or the circumstances under which this Agreement was made or executed.

S.      The headings in this Agreement are inserted merely for the purpose of convenience and shall not affect the meaning or interpretation of this document.

T.      The Parties expressly acknowledge and agree that this Agreement and its exhibits,

along with all related drafts, motions, pleadings, conversations, negotiations, and correspondence, constitute an offer of compromise and a compromise within the meaning of Federal Rule of Evidence 408 and any equivalent rule of evidence in any state.  In no event shall this Agreement, any of its provisions or any negotiations, statements, or court proceedings relating to its provisions in any way be construed as, offered as, received as, used as, or deemed to be evidence of any kind in the Action, any other action, or in any judicial, administrative, regulatory, or other proceeding, except in a proceeding to enforce this Agreement or the rights of the Parties or their counsel.  Without limiting the foregoing, neither this Agreement nor any related negotiations, statements, or court proceedings shall be construed as, offered as, received as, used as or deemed to be evidence or an admission or concession of any liability or wrongdoing whatsoever on the part of any person or entity, including, but not limited to, the Released Parties, Plaintiffs, or the Class, that the Action or any other proposed action would be certifiable as a class action under Federal Rule of Civil Procedure Rule 23 if litigated, or as a waiver by the Released Parties, Plaintiffs, or the Class of any applicable privileges, claims, or defenses.

U.     Plaintiffs expressly affirm that the allegations contained in the complaints filed in the Action were made in good faith and have a basis in fact, but they consider it desirable for the Action to be settled and dismissed because of the substantial benefits that the proposed Settlement will provide to Class Members.

V.     The Parties, their successors and assigns, and their counsel undertake to implement the terms of this Agreement in good faith, and to use good faith in resolving any disputes that may arise in the implementation of the terms of this Agreement.

W.     The waiver by one Party of any breach of this Agreement by another Party shall not be deemed a waiver of any prior or subsequent breach of this Agreement.

X.     If one Party to this Agreement considers another Party to be in breach of its obligations under this Agreement, that Party must provide the breaching Party with written notice of the alleged breach and provide a reasonable opportunity to cure the breach before taking any action to enforce any rights under this Agreement.

Y.      The Parties, their successors and assigns, and their counsel agree to cooperate fully with one another in seeking Court approval of this Agreement and to use their best efforts to effect the prompt consummation of this Agreement and the proposed Settlement.

Z.      This Agreement may be executed in any number of counterparts, each of which shall be deemed to be an original as against any Party whose signature appears thereon, and all of which shall together constitute one and the same instrument. This Agreement may be executed and delivered by facsimile or otherwise electronically as a .pdf and, upon such delivery, the facsimile or .pdf will be deemed to have the same effect as if the original signature had been delivered to the other Parties.

*Remainder of Page Intentionally Left Blank*

Agreed to on the dates indicated below.

APPROVED AND AGREED TO BY THE PLAINTIFFS

_____     DATE_____
        Matt DiFrancesco

_____     DATE_____
        Angela Mizzoni

_____     DATE_____
        Lynn Marrapodi

APPROVED AND AGREED TO BY AND ON BEHALF OF UTZ QUALITY FOODS, LLC.

BY_____     DATE_____
NAME:  Dylan Lissette
TITLE:  Chief Executive Officer and Vice Chairman

APPROVED AND AGREED TO BY COUNSEL FOR UTZ QUALITY FOODS, LLC.

BY_____     DATE 12/5/17
        Richard Fama
        COZEN O'CONNOR

APPROVED AND AGREED TO BY CLASS COUNSEL

BY_____     DATE 12/6/17
        Tina Wolfson
        Robert Ahdoot
        AHDOOT & WOLFSON, PC

42

Agreed to on the dates indicated below.

APPROVED AND AGREED TO BY THE PLAINTIFFS

_____         DATE_____
     Matt DiFrancesco

_____         DATE_____
     Angela Mizzoni

*Lynn Marrapodi (Dec 5, 2017)*
_____         DATE_Dec 5, 2017_____
     Lynn Marrapodi

APPROVED AND AGREED TO BY AND ON BEHALF OF UTZ QUALITY FOODS, LLC.

BY_____         DATE_____
NAME: Dylan Lissette
TITLE:   Chief Executive Officer and Vice Chairman
___

APPROVED AND AGREED TO BY COUNSEL FOR UTZ QUALITY FOODS, LLC.

BY_____         DATE 12/5/17
     Richard Fama
     COZEN O'CONNOR

APPROVED AND AGREED TO BY CLASS COUNSEL

BY_____         DATE_____
     Tina Wolfson
     Robert Ahdoot
     AHDOOT & WOLFSON, PC

42

Agreed to on the dates indicated below.

APPROVED AND AGREED TO BY THE PLAINTIFFS

_____     DATE  12/5/17
Matt DiFrancesco

_____     DATE  12/5/17
Angela Mizzoni

_____     DATE_____
Lynn Marrapodi


APPROVED AND AGREED TO BY AND ON BEHALF OF UTZ QUALITY FOODS, INC.


BY_____     DATE_____
NAME:  Dylan Lissette
TITLE:  Chief Executive Officer and Vice Chairman


APPROVED AND AGREED TO BY COUNSEL FOR UTZ QUALITY FOODS, INC.


BY_____     DATE_____
     Kathleen M. Guilfoyle
     CAMPBELL CAMPBELL EDWARDS
     & CONROY, P.C.


BY_____     DATE_____
     Richard Fama
     COZEN O'CONNOR


APPROVED AND AGREED TO BY CLASS COUNSEL


BY_____     DATE_____
     Tina Wolfson
     Robert Ahdoot
     AHDOOT & WOLFSON, PC